Parker, C J.,
delivered the opinion of the Court.
He first examined the deed analytically, to ascertain whether there was any latent ambiguity, which would let in parole evidence of the intention of the parties, to explain it; and he stated that the result of the deliberations of the Court upon this point was, that the terms of the deed were sufficiently clear; so that, by the general rule of evidence, it must be construed, according to the common law, by itself, without the aid of extrinsic evidence. He also stated that the Court were all of opinion, that, by the terms of the instrument, it was clear, that Mr. Pomeroy’s claim * of 9120 dollars was first to be provided for out of the [ * 325 ] fund; and that next after Mr. Dwight was to be paid 5500 dollars, without any deduction, in full of his claim. The reasoning, which had brought the Court to this conclusion, was stated at large by the chief justice; but as this part of the case related only to the construction of the contract, and had no tendency to settle any general principle of law or evidence, so much of the opinion as concerned this subject is omitted in this report.
With respect to the other point, viz., whether parole evidence of an agreement of the parties, different from that which appears in the indenture, might be admitted to control the deed, the chief justice delivered himself in substance as follows: That the elaborate and able arguments of the counsel had been perused with great attention, and all the authorities cited had been examined; and that from the whole it was very clear that, neither by the principles of the common law, nor of equity as applied by courts of chancery jurisdiction in England, could the agreement said to have been made, however well it might be proved by parole testimony, be set up in contradiction to the deed.
The chancery jurisdiction recently given to this Court, was not intended to impair or relax the rules of evidence, which govern contracts under seal, or written contracts; but merely to give a *262 specific remedy, where none could be had by the common law, in respect to the execution of trusts, and other contracts in writing; and to enable the Court to ascertain, from the parties themselves, the true state of contracts between them.
Wherever a deed is perfect in itself, and capable of a sensible construction, and there has been no fraud or imposition in obtaining it, a court of equity can no more set it aside, than can a court of law. If it were otherwise, all the inconveniences, intended to be avoided by the rule of law, would be introduced. Frauds and perjuries would be encouraged; and very often a contract [ * 326 ] would be established * and enforced, wholly different from that which the parties had solemnly sanctioned by their signatures and seals.
If, now and then, through carelessness or inattention, an instrument, formally drawn up and executed, fail of expressing the true intent of the parties in their bargain, it were better that they should suffer, than that a system should be adopted, the natural tendency and sure consequence of which would be, to increase uncertainty, multiply instances of negligence, and hold out lures to false testimony. If, on the other hand, the rule be rigidly adhered to, men will conform themselves to it; they will take counsel, and act cautiously ; and instances will seldom, if ever, occur of any fatal mistake in their bargains. Ignorance will be protected, if any advantage shall be taken of it by superior cunning or sagacity, and frauds of all kinds may be detected and defeated, by the rules of law, as they now stand.
We think that the just inference from all the cases cited is, that such relief, as is prayed for in this case, would not be granted even in the Court of Chancery in England, whose jurisdiction is not limited by any statute. The more recent authorities are full and decisive against sustaining a bill, founded on an alleged verbal agreement different from a written contract, entered into by the same parties, upon the same subject. One or two cases have been cited, bearing a different aspect; but they have been explained away, or overruled by subsequent decisions. It is repeatedly asserted by the courts of equity, that the rules of evidence arc the same in those courts as in the courts of common law; and that they cannot give relief, by relaxing, or going counter to, the rules of law (66). Indeed it would be strange that, in any country, there should be independent tribunals, having jurisdiction over the same subject matter, which should act upon such different principles, as that a contract should be valid in one and void in the other. One may *263 have forms and processes to enforce a contract, which the other may want; but it would seem * impossible that [ * 327 ] the contract itself should be valid or invalid, according to the form in which it should be discussed (67).
But were it otherwise in England, or in the state of Mew York, as some of the cases cited tend to show, it would by no means follow that, in this commonwealth, the same doctrine would be received. On questions arising out of the common law, or the law merchant, the decisions of courts governed by those laws meet with a respect here almost amounting to authority; but the system of equity, as administered abroad, has never yet been adopted here in its full extent; and. m that particular department of our jurisdiction, we are to look critically for the express authority given by the legislature, and not to assume more than was intended to be granted (68).
Whatever may be the policy of refusing to establish a tribunal with full chancery powers, we cannot avoid perceiving that such powers are looked upon with no inconsiderable jealousy; and that the authority which is given to this Court was intended to be limited to the subjects expressly mentioned in the statute. The power given is, “ to hear and determine in equity, all cases of trust, arising under deeds, wills, or in the settlement of estates, and all cases of contract in writing, where a party claims the specific performance of the same, and in which there may not be a plain, adequate and complete remedy at law.” Upon all such subjects the power is general; and the principles of equity, as settled in the chancery courts in England, may be applied, as well as the forms of process used in those courts; but no other subject can be drawn by implication into the equity jurisdiction.
The relief sought for in this bill is upon a contract not in writing, of which we have no jurisdiction under the statute; so that even if there were no deed in the way, we could not sustain the bill. And when the contract supposed is entirely contradictory to a deed actually made, to give force to the former would be to *264 [ * 328 ] violate a rule, * under the powers of chancery, which, as a common law court, we should be obliged, by our oaths, to regard.
The plaintiff’s counsel, aware of this difficulty, have urged upon us the cases in chancery, in which the courts have undertaken to reform a deed, so as to make it correspond with the intentions of the party, as proved by parole testimony. If by reforming is meant an essential change of the provisions of the deed, and of the rights and obligations of the parties, then the objections above stated are as forcible as they would be to any form of setting up a parole contract in opposition to a written one. If nothing more is meant by reforming than to make the deed comport with written memoranda, which have been mistaken by the scrivener, the application of such a power would not reach the difficulty complained of in the bill.
In short, there are but two cases in which parole evidence can be admitted to control the operation of the legal provisions in a deed or written contract, in itself complete and intelligible. One is the case of fraud, of which the injured party may avail himself in a court of law, as well as in a court of equity; and the other is, where a party applies to a court of equity to enforce a written contract, and the adverse party is allowed to show, by testimony, that the instrument relied upon does not contain the true agreement of the parties, or the whole of it. In this latter case, the court of equity will withhold the exercise of its power, unless the party seeking relief will do full justice to the other party, according to the facts which are made to appear to the Court (69). Even this power is considered dangerous, and is used with caution ; for it is an infringement of the rule of law, which considers the written instrument as a more safe declaration of the real intention of the parties, than the account given of it by the bystanders, whose memories may be frail, whose minds may be prejudiced, and whose language may be incorrect or misunderstood. [ * 329 J * It may also be observed, in relation to the case before us, that," if we could admit the evidence produced by the plaintiff, it would fail of proving satisfactorily that any actual agreement was made different from that which the deed would prove. The testimony might be sufficient to prove that the plaintiff understood the bargain, as he would now wish to have it enforced ; but he would be obliged to prove that both parties understood it so, and that the terms of the deed were inconsistent with the views of his adversary as well as himself. This does not appear *265 On the contrary, it would seem, from the answer of Pomeroy, and the testimony of some of the witnesses, that the bargain was put in writing exactly as it was made.
In short, the very case before us most clearly illustrates the reasonableness of the common law rule, that where there is a writing, that alone shall be the proof of the contract. For, upon examining and comparing the voluminous depositions of the witnesses, and the answers, by the parties, to the interrogatories put by the plaintiff, it is extremely doubtful what the real agreement was ; and if effect was given to the contract, supposed by the plaintiff to have been made, we should by no means be satisfied that injustice would not be done to Pomeroy, the principal defendant.

Bill dismissed.

 [This assertion must be understood with soiae qualifications.—Ed.]

 [These remarks show a want of knowledge of the principles on which courts of chancery act. They do not always grant or refuse relief, according as the contract or deed may be valid or void at law, but according as the claim may be equitable or conscientious, or the contrary. If, for instance, a sealed instrument were drawn up and executed, which did not contain the same, but a different agreement or grant from that which the parties intended, it would be unconscientious for the party in whose favor it was made to insist upon it contrary to or beyond the agreement or grant intended. If such party should have occasion to seek relief in equity , this Court would admit parole evidence, not for the purpose of contradicting or explaining the deed, but to show that it would be unconscientious to insist upon it. And this 'acing shown, the Court would refuse to lend their aid, and leave the party to his remedies at law.—Vide Story, Equity, 2d Vol., sec. 769, 770,771.—Ed.]

 [But the Court has adopted, as the outlines of their practice in chancery the practice of the English courts of chancery. See Rules.—Ed.]

 [Sed vide 1 Story’s Com. on Equity, 175, and cases there ¡eferredto.—Bn.j