## Williams *v.* Donaldson.

Where in an action on a promissory note, given in part payment for a reaper, in which the defendant claimed a set-off, for money paid on said reaper, at the time of its delivery, and for freight and charges paid upon the same, it appeared that the contract for the sale of the reaper, was as follows: That it was to be delivered at D., to the care of B. & P., on or before the 1st of July, 1855; that defendant, at the time of the delivery, was to pay $50,00, and the freight and charges, and $110,00 on the 1st of March, 1856; that the reaper was warranted to be of good materials—to be well made—not liable to get out of order, with careful usage—and to be capable, with one man and a good team, of cutting and raking off, and laying in gavels, for binding, from twelve to twenty acres of grain per day; that the machine was to be tried at the next harvest; and that if it did not perform as warranted, the defendant was to store and safely deliver it to G., H. & Co., the manufacturers, or their agent, &c.; and where it further appeared that the reap-

er remained in the possession of the defendant, and had never been returned or delivered to G., H. & Co., or their agent; and where the jury rendered a verdict for the defendant, for the amount of his set-off, upon which judgment was rendered; *Held*, 1. That the defendant could not keep the reaper, and at the same time recover the amount paid; 2. That the verdict was erroneous.

Where in an action on a promissory note, given in part payment for a reaper, in which the defendant claimed a set-off, on the ground of a breach of the warranty under which the reaper was sold, a witness for the defendant, on cross-examination, testified that after the reaper was delivered, defendant told him he was going over the river to Rock Island, to get some castings for the reaper, and thereupon the defendant proposed to prove by the witness, what he told him subsequently, and in another conversation, about the working of the reaper, with the castings thus obtained, which evidence was admitted; *Held*, That the evidence was not admissible under section 2399 of the Code.

Parol evidence is admissible to show that a written contract is void for fraud, or the like, or that it never had any legal existence or binding force; and such evidence does not infringe upon the rule, that parol evidence is not admissible to contradict, vary, or add to, a written instrument.

## *Appeal from the Scott District Court.*

### Thursday, April 7.

This action was brought upon a promissory note. The answer admits the execution of the note, but says it was given in part payment for a reaper sold him by plaintiff's agent; that said reaper was warranted to perform in a certain manner, (which the pleader sets out), and avers a breach, and an offer to return. It is also averred that the machine was wholly worthless and unfit for use; that defendant refused to execute the note, and would not, but for certain representations made by plaintiff; that they were calculated to deceive, and did deceive, said defendant; that they never had been performed; and that defendant was thereby defrauded, &c. He also pleads a set-off. The replication takes issue upon all the matters in defense, set up in the answer. Trial and verdict in favor of defendant, to the amount of his set-off. Motion for a new trial, and in

arrest of judgment, overruled, and judgment on the verdict. Plaintiff appeals. The other material facts are sufficiently stated in the opinion of the court.

*James Grant*, for the appellant.

*Cook, Dillon & Lindley*, for the appellee.

WRIGHT, C. J.—The contract for the sale of the reaper, is contained in a written or printed order, signed by defendant, directed to plaintiff or his agent—the material parts of which are as follows: It was to be delivered at Davenport, to the care of Burrows & Prettyman, on or before the first of July, 1855; defendant was to pay freight and charges; $50 at the time of delivery, and $110 on the first of March, 1856. Said machine was warranted to be of good materials—to be well made—not liable to get out of order, under careful usage—and to be capable, with one man and a good team, of cutting and raking off, and laying gavels for binding, from twelve to twenty acres of grain a day. The machine was to be tried at the next harvest, (that of 1855), and if it did not perform as warranted, the defendant was to store and safely deliver it to Ganson, Huntly & Co., or their agent, (subject to refunding the fifty dollars paid.) If it did perform as warranted, defendant was, when called upon by G., H. & Co., or their agent, to execute his note for $110, with interest, payable on the first of March, 1856. The note for the $110 was executed on the 20th of July, 1855, and is the one sued on in this case. Defendant pleads as a set-off, the fifty dollars paid at the time of the delivery of the machine, and the freight and charges advanced, and for this amount recovered judgment.

This much of the verdict and judgment was most clearly erroneous. There was no testimony tending to show, or from which the jury could possibly have inferred, that the machine had been returned, or delivered to the persons named in the contract, or their agent. On the contrary, it

Williams v. Donaldson.

is a fact indubitably established, that the machine, at the time of the trial, still remained in the possession of the defendant. The only offer he ever made to return was to Burrows & Prettyman. They, at the time, denied being agents for Ganson, Huntly & Co.; and there is nothing to show that they were. So far as the order itself tends to place them in the capacity of agents, they were acting as much for defendant, as his warehouseman, as for the other party. Under these circumstances, he had no right to recover the money paid. He could not keep the machine, and at the same time recover the amount paid. To recover this, his contract required that he should within a reasonable time, deliver the machine to Ganson, Huntly & Co., or their agent. An offer to deliver, and refusal to receive, would, of course, excuse him, and authorize a recovery. But the delivery or offer must have been made to some one authorized to receive it. Of this there was no proof whatever, and so much of the judgment, at least, must be reversed.

A witness for defendant, on cross examination, testified, that after the machine was delivered, defendant told him he was going over to Rock Island to get some castings for the reaper. Defendant then propose to prove by the witness, what he had told him subsequent to this, and in another conversation, about the working of the machine with the castings thus obtained. Plaintiff objected to this second conversation; the objection was overruled, and the witness proceeded to detail the same, to which plaintiff excepted.

This was error. The law is, that when part of a declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other—as when a letter is read, all other letters on the same subject, between the same parties, may be given. When a detached declaration, conversation, or writing, is given in evidence, any other declaration or writing, which

is necessary to make it fully understood, or explain the same, may also be given in evidence. Code, section 2399.

The first part of this provision refers evidently to giving all of a conversation on the same subject in evidence, where a part has been elicited by one party—such conversation being entire, and not made up of detached parts. Thus, if a witness shall detail, in answer to plaintiff's interrogatories, what a defendant told him as to the claim made against him in the plaintiff's action, defendant has a right, on cross-examination, to inquire into what else he said at the same time, upon that subject. The second part of the section relates to detached declarations or conversations; and in order to give any other than that one first introduced, in evidence, that proposed must be necessary to make the first fully understood, or to explain it.

The testimony in this case was admitted, we suppose, under the second clause. It could not have been under the first, for there is no pretense for the position that the second was a part of the first conversation. The parties had separated—the conversation had closed—and sometime afterward, defendant told him him about the working of the machine. Was the second conversation necessary, then, to explain or make fully understood, the first? Certainly not, in any fair sense. What was the fact detailed in the first instance? Nothing more than that defendant was going to Rock Island for castings for his reaper. The working, or non-working of the machine, was not the subject of conversation. To prove, then, that the defendant afterwards said that his machine did not work with these castings—did not explain, or make more fully understood, what was first said. What he said in the first conversation was just as fully understood when it was closed, as it was from any supposed explanation derived from the second. *Dougherty* v. *Posegate*, 3 Iowa, 88.

The order for the machine was given in May, 1855, and it was received in time for the harvest of that year. During that harvest, and while the defendant was using the

reaper, he was applied to for the note. The person applying was the agent for the payee, who was one of the patentees. Ganson, Huntly & Co., were the manufacturers. Several days elapsed after the agent first visited the defendant, before the note was given. He called two or three times; several trials were made with the machine under his supervision; and some changes or repairs were made by him, or at his suggestion. Defendant complained of the working of the reaper; that it did not answer, and some representations were made by the agent, as to its future working and usefulness. They talked about giving the note, and one witness says that the agent told defendant that he would make the machine work, and defendant said if he did, he would take it—that he did not mean to give a note and pay it, if the machine did not work. The agent said that there would be no difficulty about that, and witness understood that if the machine did not work, the note was not to be paid. Other testimony bearing upon the same subject was introduced. Testimony was also introduced to show that the machine did not work well, both before and after the note was given; and during the harvest of 1855, as well as that of 1856. To all such evidence plaintiff objected, upon the ground that it varied the written contract. The objection was overruled, and he excepted. Instructions were asked by him upon the same subject, which were refused, and others given, to which he excepted; and thus we have raised the third question in the case, and the one to which most of the argument has been directed.

There is no controversy as to the rule that parol evidence is not admissible to contradict, vary, or add to, a written instrument. This rule is not infringed, however, by another, which recognizes an exception just as well established, that it may be shown by parol, that the instrument is altogether void for fraud, or the like; or that it never had a legal existence, or binding force. Fraud is shown, not to vary, contradict, or add to, the writing, but to show, that

as between the parties, it never had any legal life or essence. *Bowman* v. *Torr*, 3 Iowa, 571. Cases of fraud and mistake form exceptions to the general rule, which excludes parol evidence to control or vary the written contract; and though exceptions, they stand upon as sound policy as the rule itself. *Ring* v. *Ashworth et al.*, 3 Iowa, 452. So, also, the want of consideration may be proved, to show that the agreement is not binding. 1 Greenl. Ev., section 284. Neither is the rule infringed, by the admission of oral evidence, to prove a new and distinct agreement, upon a new consideration, whether it be as a substitute for the old, or in addition to, or beyond it. 1 Greenl. Ev., sec. 303. And thus it will be found, that numerous exceptions exist which are well settled, but that they by no means impair the force or policy of the rule itself. None of these exceptions, however, justify the admission of testimony changing the time or manner of payment—as that a note on its face payable in money, was to be discharged in professional services. 5 Georgia, 373. Or that a note payable on demand, was not to be paid until after the maker's death. 3 Barn. & Ald., 233. Or a warranty as to equality not included in the written contract. 12 East, 11.

If the case before us falls under the rule last stated, then the testimony should have been rejected. This, however, is not our view of it. By the terms of the written order, the defendant was to give his note for the balance of the purchase money, if the reaper performed as warranted, and not otherwise. To determine whether it answered the warranty, the machine was to be tested at the harvest then approaching. During this harvest, the payee (or what is the same thing, his agent), appears, and they have several conversations as to its working. It is evident that at this time the defendant was not satisfied with its operation. From the testimony the jury could legitimately infer, that he denied that it fulfilled the requirements of the contract—as, also, that it did not, in fact. Experiments were made, and the defendant, as the jury might fairly conclude, was

still dissatisfied; and during all this time the agent makes the representations detailed, as to the character of the reaper, and as to the effect of giving the note. Now, none of these representations amounted to any warranty not already included in the contract. They did not add to, vary, or contradict the written instrument. The giving of the note, unexplained, would be conclusive evidence that the machine answered the warranty—that it had been tried, and had been found in all respects such as was required by the contract. If it is shown, however, that defendant was induced to give the note before the trial had been sufficiently made; that there was no waiver thereby on his part, of his rights under the contract; and that notwithstanding the execution of the note, his liability was to be tested by the terms of the original contract, the showing of these facts, does not contradict the written agreement, nor violate any rule of evidence. Suppose the note had been given as soon as the machine was delivered, and before any trial had been made; and it was shown that the payee had induced the giving of it, by representing, in the very language of the written agreement, that if the machine did not perform as warranted, the note was to be returned, or was not to be paid; and it was also shown that it had been fairly tested, as required by the contract, and was worthless, could it be claimed that such evidence contradicted the writing. It seems to us not. And no more would it, if the same thing should take place before the trial was fully made.

We do not say that the testimony warranted the conclusion, that the note was obtained under the circumstances, claimed by defendant. We only hold that the testimony was not improperly received. Its effect was another thing, and as to that, we need say nothing at this time, as the case must be reversed on grounds heretofore noticed.

The views above expressed, indicate, perhaps sufficiently, our ideas upon the main question raised in the case. The instructions are very lengthy, and to take them up separately would unreasonably extend this opinion. In the

main, we have no hesitation in saying, that they state the law correctly. So far as they relate to the question of fraud, there is but little, if any, ground in the testimony, upon which to predicate them. We could not say, however, that they were so entirely inapplicable, as were those in the case of *Moffett* v. *Cresler*, *post*, 122, as to justify their refusal, if asked.

Judgment reversed.