Gelpcke, Winslow & Co. v. Blake.

## GELPCKE, WINSLOW & CO. v. BLAKE.

1. PAROL EVIDENCE TO SHOW MISTAKE. While parol evidence is admissible to show that a written agreement, on account of fraud, accident or mistake, fails to state the whole or true contract, it is well settled that this fact must be established and made clear by the most satisfactory proof.

2. SAME. In equity and at law parol evidence of previous or contemporaneous negotiation, stipulations or terms, not incorporated in a written agreement, will not be admitted to vary or contradict its terms, unless it is made to appear that at the time of executing such agreement it was intended and understood by the parties thereto that such stipulations or terms should be incorporated therein, and that the same were omitted by accident, mistake or fraud.

*Appeal from Jackson District Court.*

FRIDAY, DECEMBER 18.

PLAINTIFF's action is founded upon the following instrument:

| 15 | 387 |
| 90 | 44 |
| 15 | 387 |
| 94 | 405 |
| 15 | 387 |
| 95 | 329 |
| 15 | 387 |
| 98 | 332 |
| 15 | 387 |
| 115 | 534 |

"*Number of shares, ten.    State of Iowa, Dubuque County,*
*March* 19, 1857 :'

"In consideration of ten shares in the capital stock of
the first division of the Dubuque Western Railroad Com-
pany, I promise to pay said company one thousand dollars,
payable in installments, at the rate of five per cent a month,
to commence as soon as the contract for the construction
of said division is let; Provided, however, that an installment
of five per cent shall be paid upon the call of the board of
directors of said company, to be used in paying the expenses
of getting said division ready for contract.   The said divi-
sion is to be located in a southwesterly direction from the
junction with the Dubuque and Pacific Railroad, and not
to be less than twenty miles in length.

"JOHN BLAKE."

The answer contained an equitable as well as˜ legal
defense.   The equity set up was, that the contract above
recited did not embrace the whole agreement; that a mate-
rial part had been omitted, which was asked to be inserted,
and the contract thus reformed.   The issues at law were
found for plaintiffs and the equitable one for the defendant.
The contract was reformed by adding this clause: "The
above subscription to the stock of the Dubuque Western
Railroad Company is upon the express understanding and
condition that the road of said company shall be located
and constructed up Langworthy Hollow, and near to the
land of John Blake.   If said railroad is not thus constructed
this subscription not to be binding upon the said Blake."
The fact being found that the road was not constructed up
Langworthy Hollow, nor near the land of defendant, plain-
tiffs' action was dismissed, and they appeal.

*Allison & Crane* for the appellant, to the proposition deci-
ded by the Court, cited Story's Eq. Jur., § 152, and the cases
cited; *Ring* v. *Ashworth et al.*, 3 Iowa, 452; 2 John. Ch.,

595; 5 R. I., 130; 10 Verm., 452; 5 Mason, 577; 17 Ill., 212; 3 Sneed, 384; 7 Ind., 69; *Eckhart* v. *The Logansport Railroad Company*, 13 Id., 409; *Piscataqua Ferry Company* v. *Jones*, 39 N. H., 498; *Dell* v. *Wabash R. R. Co.*, 21 Ill., 91; 20 Ark., 443; Hend. (Tenn.), 23; 17 Ind., 68; *Bish* v. *Bradford*, 17 Id., 494; *Wright* v. *Shelby R. R. Co.*, 16 B. Mon., 5; 24 Maine, 369; 20 Verm., 509; *The United States* v. *Monroe*, 5 Mason, 577; *Wheaton* v. *Wheaton*, 9 Conn., 96; *Dale* v. *Pope*, 4 Litt., 166; *Baugh* v. *Ramsey*, 4 Monr., 158; *Dwight* v. *Pomeroy*, 17 Mass., 324; *Tilghman* v. *Tilghman*, 1 Baldwin, 490.

*Grant & Smith* for the appellee.

WRIGHT, J.—Several questions are presented by counsel for the appellants. Our examination will be confined, however, to the leading one, which, in effect, disposes of all the others, and that is: was the court below justified under the circumstances, in reforming this contract?

While parol testimony is admissible for the purpose of showing that the written agreement, on account of fraud, accident or mistake, fails to show the whole or true contract, it is well settled that this fact must be made entirely clear, and be established by the most satisfactory proof; or, as one of the cases expresses it, those who undertake to rectify or reform an agreement by showing a mistake, undertake a task of great difficulty, and yet such evidence is not incompetent. *Marquis of Townsend* v. *Staugmon*, 6 Vesey, 328. Or as in *Gillespie* v. *Moon*, 2 Johns. Ch., 596, " the cases concur in the strictness and difficulty of the proof." And see *Ring* v. *Ashworth et al.*, 3 Iowa, 352. If the proofs are doubtful and unsatisfactory and the mistake is not made entirely plain, equity will withhold relief, upon the ground that the written paper ought to be treated as a full and correct expression of the contract, until the contrary

is established beyond reasonable controversy. Story's Eq. Jur., §§ 152–162, note and cases cited.

It is well settled in equity, as at law, that parol evidence of previous or contemporaneous negotiations, stipulations or terms, not incorporated in the writing, ought not to be admitted to vary or contradict its terms, unless it is made to appear that the parties, at the time of consummating the agreement, actually intended and understood that such terms or stipulations should be incorporated, and omitted the same by accident, mistake or fraud. A court of equity will add nothing to the contract which the parties did not intend should be a part of it. Hence, though the parties may talk about a particular stipulation, and it may have been mutually understood as a matter entering into their negotiation still if they have not made it a part of their written contract, nor omitted it from accident or mistake, or the use of some fraud or stratagem, the law presumes that it was omitted intentionally, and a court will not reform the agreement, by making such parol negotiations a part of it. It is not sufficient that there may be reason to presume a mistake. The testimony ought to be clear, decisive and unequivocal. *United States* v. *Monroe*, 5 Mason, 577; 2 Pars. on Cont., 8 and 60; *Wheaton* v. *Same*, 9 Conn., 96; *Baugh* v. *Ramsey*, 4 Mon., 158.

In *Stevens et al.* v. *Cooper et al.*, 1 John. Ch., 425, the plaintiffs sought to avail themselves of a parol agreement, alleged to have been made at the time the mortgage was executed, by which each lot was to be bound only for a ratable proportion of the mortgage debt.

In discussing the admissibility of such proof the Chancellor says, that "Such testimony is not only contrary to the statute of frauds but the maxim of the common law, and the rules of evidence on this, as on most other points, are the same in courts of law and equity." * * * "Nor does this case come within any exception admitted to the opera-

tion of the rule; for there is no allegation of fraud, mistake or surprise in making or executing the mortgage; and these, I believe, are the only cases in which parol evidence is admissible in this Court against a contract in writing." And see *Dwight* v. *Pomeroy*, 17 Mass., 302; *Ferry Company* v. *Jones*, 39 N. H., 498; *Bish* v. *Bradford*, 17 Ind., 494; *Lyman* v. *United Insurance Company*, 17 John., 372; *S. C.*, 2 John. Ch., 630; *Baily* v. *Same*, 8 Humph., 230; Lead·Cases in Eq., 2d part, §§ 539, 540.

. But without referring to other authorities, or discussing these general and well settled rules, we proceed to examine very briefly the facts in the case before us. The case in all its circumstances is not an unusual one. All that is really developed is that an agent of the company represented to the defendant that the road would be constructed up Langworthy Hollow, and as an inducement to obtain the subscription, stated that such location would enhance his land or property, and that he would obtain a contract. But for these representations it may be conceded (and this is the most that can be claimed) defendant would not have taken the stock. At the time, the work was actually progressing on the proposed route. It was afterwards changed. When the agreement was finally signed nothing was said about these matters. There is no particle of testimony that it was intended to incorporate these terms into the contract of subscription. The agent acted in the utmost good faith; there was no mistake, no accident. It does not appear that defendant signed the subscription, believing that these conditions were contained in it, nor that he would have declined the subscription, if he had known that they were not in it. All that took place aside from the written contract consisted of the usual contemporaneous talk. The defendant perhaps presuming that such oral stipulations would be binding, though not inserted in the writing. And here was his mistake, from the effects of which equity will

not relieve him.   As applied to such a case most appropriate is the language of PARKER, Ch. J.: "If now and then, through carelessness or inattention, an instrument formally drawn up and executed, fail of expressing the true intent of the parties in their bargain, it were better that they should suffer, than that a system should be adopted, the the natural tendency and sure consequence of which would be to increase uncertainty, multiply instances of negligence, and hold out lures to false testimony.   If on the other hand the rule be rigidly adhered to, men will conform themselves to it; they will take counsel and act cautiously, and instances will seldom if ever occur of any fatal mistake in their bargains.   Ignorance will be protected if any advantage should be taken of it by superior cunning or sagacity, and fraud of all kinds may be detected and defeated by the rules of law, as they now stand." (*Dwight* v. *Pomeroy, supra.*)

The case of *Williams* v. *Donaldson,* 8 Iowa, 108, referred to by counsel, is not authority in this.   There the defendant sought to show that the note was given for a reaper which was warranted to do certain work; that it did not answer the warranty; and that defendant was deceived and defrauded by certain representations, and thus induced to execute the note.   Upon the well recognized principle, that it may be shown by parol that a note or other written contract has been obtained by fraud, or without consideration, or that such consideration has failed, the testimony was held admissible.   This brief reference sufficiently shows the difference in the two cases.

The thought that this subscription was canceled and surrendered is not urged with much confidence, and is indeed entitled to but little weight.   The attempted cancellation was without authority, and in no manner binding upon the company.

How far the equity discussed could in any event affect

plaintiffs as the indorsers of this subscription note, we need not, in view of the above conclusion, now discuss.

Reversed.

LOWE, J., *dissenting.* — Accepting the rule of law which courts of equity will insist upon in the reformation of written agreements, set forth in the foregoing opinion as substantially correct, although rather sharply cast, in comparison with the same doctrine concisely stated by Judge STORY in his Treatise on Equity Jurisprudence, vol. 1, §§ 152–162, nevertheless my reading of the testimony in the case satisfies me that the real contract between the parties was clearly and beyond any reasonable doubt a conditional one, which condition was never fulfilled on the part of the company, and that its non-insertion in the written contract was wholly an innocent and inadvertent omission, growing out of the admitted fact, perhaps, that the railroad company had, at the time of making the said agreement, already settled the question of location, and let a contract for the construction thereof, under which work was then being done; and also the further fact that the agreement in question was prepared and drawn up for signature by a scrivener, a stranger to the transaction, and who, for some unexplained reason, failed to express the full terms of the agreement as it was intended by the parties.

Again, if there was the least doubt that the parties intended that the agreement should express the conditional portion of the contract, the same is entirely removed by their subsequent acts. Soon after the alleged contract was entered into, the company abandoned the location of their road up the Langworthy Hollow, whereupon the defendant at once demanded the repayment to him of the fifty dollars which he had paid on his subscription. This was done by Edward Langworthy, the agent of the company, who had made the contract with the defendant only some two months

before.    The subscription note was not taken up, although the contract was rescinded, because it was not in the possession of Mr. Langworthy, but in the custody of the treasurer of the company, at another office; yet the defendant had permission to go and take the same up, which he neglected to do at the time.

The acquiescence of the company for more than two years in the recession of the contract by their acknowledged agent, because of a failure to comply with the condition upon which the stock had been taken, without complaint, or without requiring of the agent to pay the fifty dollars which he had returned to the defendant, or without calling upon the defendant to pay any portion of the residue of his subscription, is such a ratification of the act of their agent in the premises as estops them, in my opinion, from denying his power to refund the money, or of rescinding the contract, for the reasons stated.    All this occurred in the spring of 1857.    The plaintiffs took an assignment of this canceled subscription note in the fall of 1859.    If it had any legal existence at that time, it was over due, of course, the plaintiffs received it subject to the equities of the defendant against the company.    The judgment below, as I think, should be affirmed.