## RUSSELL A. BIGELOW, Appellee, v. R. T. WILSON, Appellant.

1. **Change of Venue**: DISCRETION OF COURT. A refusal to grant a change of venue asked for on the alleged ground of the undue influence of a party and his attorneys over the people of the county, will not be interfered with on appeal, where there is nothing to show that the trial court abused its discretion.

2. **Assignment**: FRAUD IN PART: PLEA OF IN LAW ACTION: EVIDENCE. Where in an action at law to recover of the defendant an indebtedness due the plaintiff, the defendant pleaded a written assignment of such indebtedness from the plaintiff, and the latter pleaded in reply that said assignment, in so far as it purported to transfer the indebtedness sued upon, was procured through fraud, and was to such extent invalid; *held*, that a motion to transfer said cause to the equity docket should have been sustained.

*Appeal from Polk District Court.*—HON. W. F. CONRAD, Judge.

FRIDAY, FEBRUARY 3, 1893.

ACTION at law to recover from the defendant, as a stockholder of the Des Moines, Osceola & Southern Railway Company. There was a judgment for the plaintiff, from which the defendant appeals.—*Reversed.*

*N. M. Hubbard, Jr.,* and *F. F. Dawley,* for appellant.

*Cummins & Wright* and *Kauffman & Guernsey,* for appellee.

KINNE, J.—The case, as presented by the pleadings, is as follows: April 1, 1885, M. H. King began suit in the circuit court of Madison county against the Des Moines, Osceola & Southern Railway Company to enforce a mechanic's lien for $15,000, and for the. appointment of a receiver. April 9, 1885, King executed to R. T. Wilson & Co. the following assignment:

"I, M. H. King, plaintiff in the above-entitled cause, in consideration of the sum of nine thousand, three hundred dollars to me in hand paid by R. T. Wilson & Co., of the city of New York, do hereby sell, assign, and transfer to said R. T. Wilson & Co. all my right, title, interest, and claim to a mechanic's lien as set forth and claimed by me in the above-entitled suit, and in the petition and amended petition filed therein; and I do hereby authorize said R. T. Wilson & Co. to prosecute said suit in my name, or to have their own names substituted as plaintiffs in said cause, as they may elect. I further authorize said R. T. Wilson & Co. to prosecute my said claim and lien to judgment for their own use and benefit, exclusively, in any court they may see fit, and to cause execution to be issued therefor, and collect the same for their sole use and benefit, either in my name, or in the name of the firm of R. T. Wilson & Co., as they may elect."

At the same time Wilson & Co. executed to King the following: "It is understood that the assignment made by M. H. King to R. T. Wilson & Co., of mechanic's lien claim against Des Moines, Osceola & Southern Railway Company, does not include subsidy

notes taken by King, and now with the Des Moines National Bank, in the sum of about six thousand dollars."

R. T. Wilson, the defendant in this action, was the principal member of said firm of R. T. Wilson & Co. February 8, 1887, King obtained a judgment by default, in the district court of Clarke county, against said railway company, for six thousand, eight hundred and forty-seven dollars and sixty-nine cents. This judgment is based upon a part of the claim involved in the Madison county suit, and which, as appears on the face of the assignment above referred to, was by it transferred to Wilson & Co. In the same month King assigned the Clarke county judgment to the plaintiff herein, a nonresident, who began this action. R. T. Wilson, as the plaintiff claims, was the owner of one thousand, five hundred shares of stock in said railway company, of one hundred dollars each, for which he was indebted to said company, and an execution having been issued against the company, and returned unsatisfied, this action was brought to recover of the defendant, as a stockholder of said company, under the provisions of the statute. The defendant, for answer to plaintiff's claim, pleaded: *First.* A general denial. *Second.* Ownership of the claim sued upon, in himself, by virtue of the assignment heretofore set out. *Third.* That, after King assigned the claim and lien, Wilson & Co. filed a pleading in the Madison county suit, setting out the assignment, and their ownership of the claim thereunder; that they moved the court to substitute them as plaintiffs; that the court found that King had sold the claim to Wilson & Co., and sustained their motion. This is claimed to have been an adjudication that Wilson & Co. owned the claim. A demurrer was sustained to the second defense. In a reply the plaintiff denied that King assigned his entire claim.

The cause was tried, and King was permitted to testify that he had not sold the entire claim of fifteen thousand dollars to Wilson & Co., but had retained six thousand dollars of it. For this error the judgment was reversed by this court. 77 Iowa, 603. After the reversal of the case, and on September 21, 1889, a reply was filed, wherein it was alleged that King was the owner of two claims against the railway company,— one for six thousand dollars, and the other for nine thousand dollars; that upon the latter he was entitled to a mechanic's lien, and upon the former he was not, because he had taken as security therefor the subsidy notes heretofore referred to; that Hubbard, as attorney for Wilson & Co., desired to file a bill in their behalf in the United States circuit court, and against the railway company and others, and obtain the appointment of a receiver to take possession of the road, and hence Hubbard was desirous of purchasing so much of King's claim as was secured by a mechanic's lien, and thereby control the litigation then pending in Madison county, wherein King had had a receiver appointed for the road. "To that end the said Hubbard solicited an interview with the said King, and although he, the said Hubbard, well knew that the said King had an attorney employed to prosecute both said claims against the railroad, he, the said Hubbard, with intent and for the purpose of deceiving the said King, and knowing that he was desirous of realizing money on the claim so secured by mechanic's lien, represented to him that he ought not to consult the said attorney; that if he did, in all probability, he would object to said sale; and that they would not be able to agree upon any arrangement; and by these representations, and with the intent aforesaid, prevented the said King from consulting his said attorney at any time during the negotiations preceding the execution of the assignment, or from submitting the

said assignment to the said attorney; that when
the said assignment, a copy of which is attached to
the answer, was prepared by the said Hubbard, and
submitted to the said King, he, the said King, objected
thereto, and told the said Hubbard that, as it was then
drawn, it might be held to cover and convey the claim
for six thousand dollars, aforesaid, against the said
railroad company, which it had been expressly agreed
by said Hubbard and said King should not pass by said
assignment, and which the said Hubbard had expressly
refused to purchase; and thereupon the said Hubbard,
with the purpose and intent aforesaid, prepared the
said instrument as a part of the original assignment, a
copy of which is above set out, and signed the same,
and then and there, with the intent to deceive the said
King, representing and stating specifically to him that
if there was any doubt about the said paper, as it was
originally drawn, there could be none then, and then and
there expressly agreed that the said six thousand dollar
claim, being the claim upon which the said King after-
wards obtained the judgment set out in the petition,
did not pass by said assignment, but in fact remained
the property of the said King.   All of which was done
by the said Hubbard, he intending at the time, in fact,
to procure from said King an assignment for both
claims, including the said six thousand dollar claim,
but concealing from said King such purpose and
intent, and representing to him, with the purpose and
intent aforesaid, that the said instrument left him,
the said King, in the full possession and ownership of
said six thousand dollar claim, and stating to him
that, if he would close up the transaction in that form,
he would remain the owner of said six thousand dollar
claim; and the said R. T. Wilson, through the said
Hubbard, then and there, in further assurance of his
avowed purpose, but concealing his real purpose afore-
said, agreed to do all that could be done to assist the

said King in recovering from the said railroad company the said claim; that the said Hubbard did not pay the said King for the said claim of six thousand dollars, or any part thereof, and did not claim or suggest that the said R. T. Wilson & Co. became the owners thereof; that the said representations and conduct of the said Hubbard were, as above set forth," fraudulent, and he thereby procured said assignment.

The defendant moved to strike the reply from the files because the matter therein constituted a new cause of action, in equity, and not the subject of amendment, which motion was overruled, and he excepted. Thereafter the defendant demurred to the reply, because the facts alleged did not constitute fraud; that the facts pleaded were not admissible to contradict the written assignment; that his claim is inconsistent with the one made in his original petition; that the matter had been adjudicated in the manner heretofore stated. The demurrer was overruled, and the defendant excepted. The defendant amended his answer, alleging that the stock in the railway company, held by Wilson & Co., was so held by them as trustees only; that they were induced to take said stock by reason of false and fraudulent statements made to them by the officers of the railway company as to its earnings; and that when they discovered the falsity of such statements the railway company was insolvent, and in the hands of a receiver, and hence the defendant was not liable for unpaid subscriptions on said stock. He also alleged that the stock upon which it was sought to render him liable was issued in excess of the amount authorized by the articles of incorporation of the company, and void. This amendment the plaintiff denied.

I.    At the proper time the defendant moved for a change of venue. The application was based upon 1. CHANGE of venue: discretion of court. undue influence over the inhabitants of Polk county by M. H. King, the real

party to the suit, and of the plaintiff's attorneys. Counter affidavits were filed. It was a matter within the sound discretion of the court, as to whether it should grant the application. It refused to do so. There is nothing in the record which would indicate that in so doing the district court abused the discretion with which it is vested.

II. By a motion made in the court below to transfer the case to the equity docket, and which was over-

2. ASSIGNMENT: fraud in part: plea of in law action: evidence.

ruled, the question is raised as to the right of the plaintiff, in a law action, wherein fraud is pleaded in procuring an assignment as to part only of the indebtedness transferred thereby, and when the assignment, on its face, is of an indivisible sum or claim, to show by parol that in fact only a part of said indivisible sum or claim was passed by such an assignment, and as to the balance it was void, for fraud. In other words, may the plaintiff in a law action plead and prove that a written assignment, in form transferring an entire indebtedness, is good as to part of such indebtedness, and void as to the balance, as having been fraudulently obtained? Can he, in such an action, avail himself of that part of the contract beneficial to him, and repudiate the rest as fraudulent? The precise question presented is one seldom raised and on which there have been few adjudications. We may be aided in its proper solution by a brief reference to some of the general rules of law touching the admission of evidence of fraud as to written contracts. It is said in 1 Greenleaf on Evidence, section 284: "It is, in the next place, to be noted that the rule [excluding parol evidence] is not infringed by the admission of parol evidence showing that the instrument is altogether void, or that it never had any legal existence or binding force, either by reason of fraud or," etc. So in *Williams v. Donaldson*, 8 Iowa, 108, referring to the same rule, it is said "that it may be shown by parol

that the instrument is altogether void, for fraud or the like, or that it never had a legal existence or binding force. Fraud is shown, not to vary, contradict, or add to the writing, but to show that, as between the parties, it never had any legal life or essence." *Bowman v. Torr*, 3 Iowa, 571; *Bank v. Hurford*, 29 Iowa, 584.

On the former appeal it was held that the written assignment in controversy was "an assignment of all his (King's) interest, made in the most positive form. * * * If the rule contended for by the appellee is to prevail, then, merely by way of construing the contract, a radical change is made in its language. Instead of an assignment of all, as in terms expressed, it is made an assignment of part, and that without a word in the writing having a remote reference to such a purpose." 77 Iowa, 605. The appellee's contention is that in fact the claim assigned is made up of two separate claims; hence fraud may be pleaded as to one and the assignment held good as to the other. The difficulty in this case is that the claim, so far as appears from the assignment, is one and indivisible. There is nothing in the assignment, or the paper which is a part of it, to indicate or suggest that more than one claim was assigned, or that the subject-matter of the claim was based upon, or grew out of, two separate contracts. If the appellee's contention is correct, then, by pleading fraud to an assignment, as to a part of the claim transferred by it, and treating the assignment valid as to the balance of the claim therein mentioned, it would operate, as it seems to us, to vary and contradict the assignment, as it appears on its face to assign but one claim. If the fraud alleged does not avoid the whole assignment, which on its face purports to carry an indivisible claim, then, it would seem to follow, it must result in changing the legal effect of the instrument in part, which we think can not be done in an action of this kind. It is, in effect, accomplishing a reformation

of the entire contract under a plea of fraud in procur-ing it, as to a part only of its subject-matter, when on its face it is indivisible. It is contended that law and equity have concurrent jurisdiction to relieve from the consequences of fraudulent conduct. To a certain extent such is the case. A learned writer says: "Where the primary right is legal, and the remedy is also legal, a recovery of money, simply, or of the possession of chattels, the jurisdiction is concurrent, and only exists (in equity) when the remedy which the party might obtain at law is not adequate." Pomeroy on Equity Jurisprudence, sections 178, 911. If this assignment, on its face, showed that it embraced two separate claims, it may be that a court of law could afford relief as against one of them, which was by fraud embraced therein, but such is not the case at bar. Here we have an instrument purporting to assign a single claim, and we do not think that in a law action the fraudulent part of it can, in the language of appellee, be "eliminated," and the rest remain in force. It seems to us that in a case like this, where part of the subject-matter of a contract, which is not on its face separable, is assailed as having been procured by fraud, relief must be sought in a court of equity, where the contract may be reformed in accordance with the facts.

In accordance with the views above expressed, the cause is reversed with direction to the district court to transfer the same to the equity calendar. REVERSED.