THOMAS F. MURPHY v. THE FIRST NATIONAL BANK OF CEDAR FALLS, E. A. HOWARD, Receiver, Appellant.

Reformation: EVIDENCE.  *Held*, insufficient to show that notes signed by a firm should be reformed to be a certificate of deposit of a bank officered by members of said firm.

*Appeal from Black Hawk District Court.*—HON. FRED O'DONNELL, Judge.

SATURDAY, JUNE 1, 1895.

Suit in equity to reform and change two promissory notes executed by W. M. Fields & Bro. so that on their face they will be certificates of deposit on the First National Bank of Cedar Falls.  There was a decree for the plaintiff, and defendant appeals.— *Reversed.*

*Charles D. Fullen* and *J. J. Tolerton* for appellant.

*Burns & Sullivan* for appellee.

Rothrock, J.—The plaintiff is a farmer, and resides on his farm in Grundy county, fourteen miles from the city of Cedar Falls.   On the twenty-second day of September, 1891, he went to the place of business of the defendant bank, and gave his check on the Bank of Reinbeck for one thousand and twenty-five dollars, and paid one hundred and seventy-five dollars in money in addition, making an aggregate sum of one thousand two hundred dollars, for which he received a promissory note for that sum, payable one year from date, with interest at seven per cent. per annum.   The note was signed W. M. Fields & Bro.   Afterwards, and while the said note was in his possession, and on the seventh day of July, 1892, he gave his wife a check for nine hundred dollars, which she took to said bank, and received therefor a promissory note for that amount, payable in one year, with interest at seven per cent., and signed by W. M. Fields &, Bro.   On September twenty-second of the same year his wife, in the absence of the plaintiff, but by his direction, took the note for one thousand two hundred dollars to the bank, and had the interest thereon computed, which amounted to eighty-four dollars, and paid sixteen dollars in money, delivered up the note, and took a new one for one thousand three hundred dollars, due in one year, with interest at seven per cent., and signed by W. M. Fields & Bro.   These notes became due on the seventh day of July, 1893, and the twenty-second day of September in the same year.   The bank closed its doors and suspended business on the sixteenth day of May, 1893. The partnership of W. M. Fields & Bro. failed at about the same time.   The firm was composed of W. M. Fields and C. J. Fields, one being president and the other

cashier of the bank, and the financial affairs of the part-
nership were transacted at the bank.   This equitable
action is for the purpose of reforming the notes so that
they will be obligations against the bank the same as
though they had been seven per cent. certificates of
deposit, payable by the bank.   The partnership and the
bank are both insolvent, and their assets are insuffi-
cient to pay their creditors.   The record does not show
what, if any, per cent. the partnership will pay.   It
appears that the assets of the bank will be insufficient
to pay the undisputed claims against it, even if the
stockholders who hold full-paid stock should pay an
amount equal to their stock, as provided by law.   It is
safe to say that the partnership is even in a worse con-
dition.   If it were not, this suit would probably not
have been brought, for we do not understand that it
is claimed in behalf of plaintiff that both the bank and
the partnership are liable upon these notes.

The ground upon which the plaintiff places right
to a decree changing these notes into certificates of
deposit of the bank is that the officers, agents, and
employes of the bank committed a fraud upon the
plaintiff by delivering to him and his wife promissory
notes of the partnership instead of certificates of deposit
on the bank, and by representing the said instruments
to be certificates; and that plaintiff relied upon such
representations, and believed them to be true, and
believed he had certificates of deposit, until after the
failure of the bank.   It is not our practice to incumber
an opinion of this court by setting out the testimony of
the witness in detail, especially in equity cases.   We
will state some facts which we think are estab-
lished by the evidence.   The plaintiff can read
and write, but is not a ready reader of writing.
His wife is more proficient in this respect than he is.
We do not attach much importance to the claim made

in the petition that neither of them was able to distinguish the difference between a promissory note and a certificate of deposit. They had transacted considerable business with banks before any of these notes were taken. When the plaintiff returned home from the first transaction with the note for one thousand two hundred dollars in his possession, it was read to him by his wife. He testified on that subject as follows: "My wife read the note for me. She very often does such things. She can read writing when I can't, and she read the note to me." This occurred on the twenty-second day of September, 1891, and the plaintiff held that note for one year, had it renewed, took the other note for nine hundred dollars in July, 1892, and did not discover that any of the instruments were notes until the bank and the partnership failed, in May, 1893. It is true that the business of receiving the money and taking the notes was transacted at the counter of the bank. The president and cashier were not present at any of the transactions. Each of them was represented in the bank at the time by a son, and at one time another employe was present. Both of the sons testified, as witnesses, that no misrepresentations were made as to the character of the instruments; that the plaintiff and his wife knew they were dealing with the partnership. This evidence is to some extent corroborated by the undisputed fact that the bank was not paying more than six per cent. upon time deposits. If this case was determined in the court below with reference to the number of witnesses who testified on each side to the controversy upon the question of fraud, we think the decision ought to be sustained, because, taking all the facts in the case into consideration, we do not think there was a preponderance of the evidence in favor of the plaintiff. It may be that the court rejected the testimony of the officers and employes of the bank. We see no reason for so doing except that the bank and

Field & Bro. appear to have made a disastrous and disgraceful failure. But we do not think that there should have been a decree for the plaintiff even if the evidence in behalf of the defendant is rejected. This is a case for the reformation of writings on the ground of fraud. In such case it is required that the evidence to authorize a reformation must, to say the least, be clear and satisfactory. In *Gelpcke v. Blake*, 15 Iowa, 387, it is said: "When parol evidence is admissible for the purpose of showing that the written agreement, on account of fraud, accident, or mistake, fails to show the whole or true contract, it is well settled that this fact must be made entirely clear and be established by the most satisfactory proof. * * * If the proofs are doubtful and unsatisfactory, and the mistake is not made entirely plain, equity will withhold relief upon the ground that the written paper ought to be treated as a full and correct expression of the contract until the contrary is established beyond reasonable controversy;" citing Story, Eq. Jur. sections 152-156. See, also, *Tufts v. Larned*, 27 Iowa, 330; *McTucker v. Taggart*, 29 Iowa, 478; *Hervey v. Savory*, 48 Iowa, 313; *Clute v. Frazier*, 58 Iowa, 268 (12 N. W. Rep. 327); *Wachendorf v. Lancaster*, 61 Iowa, 509 (14 N. W. Rep. 316, and 16 N. W. Rep. 533); *Dirkson v. Knox*, 71 Iowa, 728 (30 N. W. Rep. 49). We do not understand counsel for appellee to question the application of this doctrine to the case at bar.

It appears to us that further elaboration is unnecessary, more than to say that the evidence shows that the money of the plaintiff was not appropriated to the use of the bank. It did not at any time become part of its assets, and it ought to require more evidence than this record contains to put the plaintiff on an equality with creditors of the bank who hold just and valid claims against it. The decree of the district court is *reversed*.