## BUCHANAN V. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

1. **Evidence:** OPINION: COMPETENCY. A woman who was accustomed to drive over a railway track where a flagman was stationed, every day, and sometimes five or six times a day, was competent to testify that she knew the flagman's signal to stop and to go on, and that he gave the signal to go on at the time in question.

2. **Railroads:** INJURY TO TRAVELER AT CROSSING: CONTRIBUTORY NEGLIGENCE: QUESTION FOR JURY. A woman driving a horse to a buggy was approaching the crossing of several railroad tracks where a flagman employed by the defendant was habitually stationed. She stopped within half a block of the crossing to await an opportunity to cross. The flagman signaled for her to come on, which she did, though she knew a train was approaching on one of the tracks. When her horse had reached the first track the flagman stopped her, and the horse became frightened, turned, upset the buggy and ran away. There was evidence tending to show that, had the flagman not interfered, she would have effected the crossing in safety. These being the facts, *held,* in an action to recover for resulting injuries, that it was error to direct a verdict for the defendant on the ground that she was guilty, as matter of law, of contributory negligence, but that that question should have been submitted to the jury.

3. ———— : ———— : NEGLIGENCE OF FLAGMAN FOR THREE COMPANIES : WHICH LIABLE. Three railroad companies had their tracks on the same city street, and, by agreement among them, one company employed and paid a flagman at one street crossing, another at a second, and the other (the defendant) at a third crossing. By the negligence of the flagman at the third crossing in signaling the approach of a train belonging to one of the companies which did not employ him, plaintiff's assignor was injured. *Held* that the flagman was defendant's servant, even when flagging a train for one of the other companies, and that defendant was liable for his negligence.

*Appeal from Linn District Court.*—HON. J. H. PRESTON, Judge.

FILED, OCTOBER 8, 1888.

THIS is an action to recover for a personal injury, and for damages to a horse and buggy, occasioned, as is alleged, by the negligence of a flagman at a street crossing of the track of the defendant's railroad, and

the tracks of the Chicago & Northwestern Railway Company, and the Burlington, Cedar Rapids & Northern Railway Company. There was a trial by jury. At the close of the introduction of the plaintiff's evidence a motion was made by defendant's counsel to direct the jury to return a verdict for the defendant. The motion was sustained. The plaintiff appeals.

*Henry Rickle*, for appellant.

*Mills & Keeler*, for appellee.

ROTHROCK, J.—I. The material facts in the case are in substance as follows: The defendant, and the Chicago & Northwestern Railway Company, and the Burlington, Cedar Rapids & Northern Railway Company, all have railroad tracks on Fourth street, in the city of Cedar Rapids. The street, while not laid out with the cardinal points of the compass, may, for the purposes of this opinion, be said to run east and west. On the west side of the street are two tracks belonging to the Northwestern road; next is the track of the Burlington, Cedar Rapids & Northern road; and on the east side of the street is the track of the road of the defendant, the Chicago, Milwaukee & St. Paul Railroad Company. The four tracks practically occupy all of that part of the street which is between the sidewalks; that is, the street is not used to any extent for travel and traffic. These railroad tracks are used by all the trains of these roads. There are no other tracks upon which said companies run trains through the city. Fourth street is crossed at right angles by First, Second, Third and other avenues. Owing to the great number of trains passing over these tracks, it became necessary some years ago to place flagmen at the crossings of First, Second and Third avenues, in order to protect travelers upon those avenues from collisions with trains. The Burlington, Cedar Rapids & Northern Company employed a flagman at the First avenue crossing. The Chicago & Northwestern Company employed one at the Second avenue crossing, and the defendant employed one

at Third avenue. The evidence shows that the flagman at Third avenue was hired by the defendant, his name carried on its pay-roll, that he was paid by it, and that he was placed there for the purpose of attending to the duty of flagman at that crossing for all the trains of said companies. In May, 1886, the plaintiff's wife and her mother were driving a single horse to a buggy along Third avenue, and approaching Fourth street from the west. The plaintiff's wife was holding the reins and driving the horse. Before reaching Fourth street, the plaintiff's wife observed that a freight train was standing on one of the railroad tracks. The train had been opened or parted to allow vehicles to cross, and it closed up and was coupled together and moved off. The horse was stopped about half a block away from Fourth street, to await an opportunity to pass over. Before the caboose at the end of the train entirely cleared the crossing, the flagman came round the end of the caboose, and signaled to the plaintiff's wife to drive over. The signal was made with a flag. The horse was driven up to the crossing, and, when he was about to the first track, the flagman called to the driver to stop, and moved his flag close up in front of the horse. The horse became very much frightened, and one witness testifies that the flagman seized hold of the bridle. A freight train was approaching from the east on the west track. The horse backed and turned, and upset the buggy and ran away, injuring the driver and her mother, and the horse and buggy. The plaintiff's wife assigned to him her claim for the personal injury to her, and he seeks to recover damages for that, and for the injuries to the horse and buggy.

Several objections are made to the rulings of the court in excluding certain evidence offered by plaintiff.

1. EVIDENCE: opinion: competency. These questions do not appear to us to demand extended consideration. The plaintiff's wife stated as a witness that the flagman moved his flag for her to come on. This statement was stricken out on motion of defendant. The objection to it was that it was incompetent, immaterial and

matter of opinion. But the witness was immediately allowed to state that she knew the signal to stop or to go on, and that the flagman gave the signal to go on. That she was competent to give this evidence was apparent from the fact that she testified that she had been in the habit of crossing at this place every day, and sometimes five or six times a day. She also testified that the horse was "very much afraid of the cars ever since, and runs every time he sees one," and that she cannot drive the horse any more, and that she never had difficulty in driving him before. Counsel then asked her whether the horse had a disposition to frighten at trains before. An objection to this question was sustained. We think the question was proper, but the court may have been of opinion that the witness had already answered the question in substance. The same may be said of objections which were sustained to questions by which it was sought to show that, if the flagman had not stopped the horse and frightened him, there would have been ample time to have passed over the crossing without injury from the approaching train.

II. It is claimed by counsel for appellee that the court was justified in instructing the jury to find for the

2. RAILROADS: injury to traveler at crossing : contributory negligence : question for jury.

defendant upon the ground that the plaintiff's wife was guilty of contributory negligence. We do not think this position can be sustained. The ground upon which the claim is based is that she should have seen the approaching train, and stopped the horse before driving him upon the track. The evidence shows that she and her mother heard the ringing of the bell upon the approaching engine, and that her mother saw the train. There are two sufficient answers to this position of counsel: (1) There was evidence which should have been submitted to the jury, to the effect that, if the flagman had abided by his first signals to cross over, there would have been no injury. Indeed, the jury could not fairly have found that there was not ample time to make the crossing in safety if the flagman had not interfered, and frightened the horse. (2) No

court would be justified in holding as matter of law that there could be no recovery because the driver did not stop before reaching the track. She did stop, and was bidden to go on; and, while she would not have been justified in rushing into a place of obvious danger, yet it was for the jury to determine whether she was justifiable in relying on the signal to cross over.

III. Counsel for appellant contends that the flagman was acting in the line of his duty in giving the signal to cross over, and in his efforts to stop the horse when he came up to the crossing. We think he is correct in this claim, and we do not understand that defendant's counsel dispute the general proposition that, if the flagman was guilty of negligence by reason of which the injury occurred, there can be a recovery as against some one. But it is insisted that, as the approaching train was a Northwestern train on one of the Northwestern tracks, the flagman was not performing any service for the defendant, but for the Northwestern company. In other words, it is claimed that, if there was actionable negligence of the flagman in attending to his duty upon the approach of a train upon any of the tracks, the right of action is maintainable against the company owning the track and operating the train thereon. Counsel for appellee base their argument on this point upon the following propositions, which we will state in their own language : "(1) That at the time and place of the accident the flagman was engaged in performing services and duties for the Chicago & Northwestern Railway Company alone, in which this defendant had no interest, and over which it had no control. (2) That in performing such duties and services, the flagman was then acting under the immediate and exclusive direction and control of the Chicago & Northwestern Company, who alone were responsible for his acts. He was their servant *ad hoc.* (3) That the service and duty to be performed by the flagman for the several railway companies was not one in which they were jointly interested, but was separate and

*3. ——:——: negligence of flagman for three companies: which liable.*

distinct for each company. Defendant had no interest in, or control over, the tracks or trains of the Chicago & Northwestern Railway Company, or the flagging for that road." We do not understand counsel for appellant to combat these general propositions, but he claims that the evidence does not sustain them. As we have said, each of the three railroad companies employed a flagman,—one at First, one at Second, and one at Third avenue,—and each flagman performed the duty pertaining to his employment for all the trains on all the roads. The only witness who testified upon this question was the flagman by whose alleged negligence the accident occurred. He was paid in full by the defendant company, and there is no evidence that any part of his wages was paid by either of the other companies. Upon the face of the record, as presented in the pleadings and evidence, the fair presumption would be that each of the companies paid the flagman whom it employed. The service does not appear to have been greater, nor more difficult, nor to have required a man commanding higher wages, at one crossing than another. The flagman did not claim that he had any separate contract with each company. It is true, he persisted in stating as a witness that at the time of the accident he was in the service of the Northwestern Company, and that, when a train approached upon the track of any of the roads, he flagged that train for that company ; and that "lots of times" he talked with the agents of the Northwestern and Burlington, Cedar Rapids & Northern Companies about flagging their trains. All the testimony he gave upon this point was in the nature of an argument. He gave no facts tending to show any employment by any one, except that he was sent there by the defendant to do his work at that crossing, for which the defendant paid him ; and his employment was to flag the crossing, no matter whose trains, nor upon what roads they were run. The idea that he was under the employment of one company for five minutes, and then another for a few minutes, and another for a short time, and that he changed his employers with the

facility with which the kaleidoscope exhibits an array of colors, involves an absurdity. It can only be accepted upon the theory that one of these companies had one set of signals for flagmen, and the other a different kind, and that one required the signal to be given when another did not, and thus make their flag service, not only the ridicule of the public, but a system of deception, to the great peril of the most prudent and careful drivers. As far as this record shows, the defendant was the proper party. The property in the different tracks and the owners of the trains do not enter into the question, so far as it appears in the evidence. There was evidence proper to be submitted to the jury that each of these companies was responsible for the flag service at the crossing where it employed, placed and paid a flagman; and that they could each contract with the other in that manner cannot be questioned. And when the defendant thus undertook to guard and flag the crossing at Third avenue, it is, to say the least, primarily liable to the traveling public for the proper performance of that duty. We do not deem it necessary to cite authority in support of this proposition. As supporting it, however, see *Kellogg v. Payne*, 21 Iowa, 575. It will be understood that we are determining the question of the alleged negligence of a flagman, and not the negligence of employes operating a train on one of the tracks in said street.                         REVERSED.