(Decided June 28th, 1898.)

---

## HENRY LEE SYKES ET AL. *vs*. MARY VAN BIBBER.

*Devise and Legacy—Bequest of Residue of Indefinite Sum after Bequests of Definite Portions—Abatement of Legacy.*

Where definite portions of an indefinite amount of money are given by will to four persons and then the residue of that indefinite sum is given to a fifth person, the word residue is to be taken in its ordinary sense, and in the event of a de-

ficiency of assets, the definite legacies do not abate in favor
of the legatee of the residue, but the same are entitled to pri-
rority.

A testator bequeathed $30,000 to a trustee for the benefit of his
nephew and provided that if the nephew should die under the
age of twenty-five, without issue, then $5,000 should be paid
to each of four designated persons and the residue to Mrs. V.
By another clause of the will the residue of the testator's
estate, after payment of legacies, was divided equally between
the testator's nephew and Mrs. V., the share of the nephew
to be held in trust under the same terms as the legacy of
$30,000. Testator's nephew died under the age of twenty-five
and without issue. The estate was insufficient for the pay-
ment of all legacies in full and there was nothing payable
under the residuary clause of the will. *Held*, that it was not
the intention of the testator to divide the $30,000 upon the
death of his nephew into aliquot parts and give to Mrs. V.
two-sixths of the whole, but that the legacies of $5,000 each
are entitled to priority and should be paid without abatement
in favor of the legatee of the residue of the sum of $30,000.

Appeal from a decree of the Circuit Court of Balti-
more City (WICKES, J.) by which it was adjudged that
according to the " true intent of the last will of George
G. Presbury, deceased, Mary Van Bibber is entitled to
receive as her share of the sum of $9,544.58, now in the
possession of the trustee to be distributed, under the
said third item, ten-thirtieths thereof, and that Imogene
H. Sykes, and Imogene H. Sykes, trustee for Lena
Sykes, Harry Lee Sykes, and Anna St. Clair Patterson,
assignee of Charles H. Sykes, are each entitled to re-
ceive as her·or his share of the said sum of $9,544.58,
under the said third item, five-thirtieths thereof."

The cause was argued before McSHERRY, C. J.,
BRYAN, FOWLER, PAGE, BOYD and PEARCE, JJ.

*Edward Duffy* and *Joshua Horner, Jr.*, for the appel-
lants.

The testator gave $30,000 to Mrs. Van Bibber as well

as to James Sykes. As he had so well provided for Mrs. Van Bibber already, is it not reasonable to suppose that when he came to divide up the money under the third item, he thought that as the four legatees had not been so well provided for that he would give them each $5,000 absolutely, and, at all events, irrespective of the amount to be divided and would give Mrs. Van Bibber the uncertain residue? Or, to put it in another way, that he intended to give Mrs. Van Bibber the whole amount to be divided under the third item charged with four $5,000 legacies. The word "residue" has a clear and definite meaning, viz., what is left after certain other payments. It takes a clear intent on the part of the testator to make it mean anything else and such an intent is wanting in this will. *In re Harries Trust,* 1 Johns. 206; *Johnson* v. *Home &c.,* 152 Mass. 89; *Corballis* v. *Corballis,* 9 L. R. Ir. 309; *Falkner* v. *Butler,* Amb. 514; *Aston* v. *Wood,* 43 L. J. Ch. 715; *Williams* v. *Armstrong,* 12 Ir. Eq. 356; *England* v. *Vestry &c.,* 53 Md. 466.

Then again the testator directs that the money coming into the hands of Jenkins, trustee, is to be invested by him and before a division could take place, these investments must be sold and the four $5,000 legacies paid out of the proceeds, and the residue to go to Mrs. Van Bibber. In other words, the testator is dealing with money in the shape of investments and directs money legacies to be paid out of it. Now it has been held that in a case of this kind, although the amount invested is definite, still the residuary legatee only takes the residue. A testator had £7,100 in stocks; he willed £5,000 to A, £500 to B, and the residue to C; there was not enough realized to pay the £5,000, and £500 pound legacies and the Court held that the residuary legatee got nothing, because the testator was not dealing with a specific sum because he could not tell how much the stock would bring. *Petre* v. *Petre,* 14 Beav. 197; 1 *Jarman on Wills,* 722.

Where the fund is indefinite, the word residue should receive its ordinary meaning. *Page* v. *Leapingwell,* 18 Ves. 463; *Elwes* v. *Causton,* 30 Beav. 334; *Wright* v.

*Weston*, 26 Beav. 429; *Hazelwood* v. *Green*, 28 Beav. 5; *Harley* v. *Moon*, 1 Dr. & Sm. 627; *Vivian* v. *Mortlock*, 21 Beav. 252; *Booth* v. *Alington*, 6 De G., Mc. N. & G., 613; *Baker* v. *Farmer*, 3 Ch. App. Cas. 537; *Aston* v. *Wood*, 43 L. J. Ch. 715; *Williams* v. *Armstrong*, 12 Ir. Eq. 356; *Petre* v. *Petre*, 14 Beav. 197; *Corballis* v. *Corballis*, 9 I. R. Ireland 309; *De Lisle* v. *Hodges*, L. R., 17 Eq. Cas. 440.

*David Stewart* filed a brief for Anna St. Clair Patterson, one of the appellants.

*D. K. Este Fisher*, for the appellee.

The word " *residue* " is rarely met with in wills except in the general residuary clause in which the testator sweeps up all which is left undisposed of in the other items, in order to prevent an intestacy—for that reason and in such connection it usually imports indefiniteness and, for the same reason is, perhaps, commonly understood to be a word of indefinite import—but the meanings of words depend upon the connections in which they are employed. Wherever the word " residue " is used in reference to the remainder of a definite fund, it has a meaning exactly contrary to that which it has when employed in a general residuary clause. The third item in Mr. Presbury's will is not the general residuary clause, however, just as what appeared *in form* in *Church Extension* v. *Smith*, 56 Md. 399, to be the residuary clause of that will, was held not to be the true residuary clause.

It would seem quite clear that if one having a certain sum to portion out, as for instance, an invested fund of $10,000, says, I give $3,000 of it to A, $2,000 of it to B, and the " *residue* " *of* $5,000 to C, C's interest in the fund is just as definite as A's or B's—his interest is $5,000. If when the time comes to pay out the fund, it is found that the fund amounts to less than $10,000, it would seem equally clear that A, B and C would share in whatever the fund amounts to in the proportions of three-tenths, two-tenths and five-tenths respectively; for it is clear that what the owner of the fund meant C to have

out of it, was the difference between $10,000 and the aggregate of the $3,000 and $2,000 given to A and B respectively, although he has called it a " residue "; and hence what he gives C, is equally as specific as what he gives A and B. *Naming the amount of the " residue " does not make it any clearer*, for it is clear already, since the " *residue* " is the *difference* between the $10,000 and the sum of this $3,000 and the $2,000. That this is so, is fully recognized by numerous authorities. It is well settled that where a testator is undertaking to dispose of a definite fund by will by bequeathing legacies of fixed and certain amounts out of it, and then bequeathing the " *residue* " or " *remainder* " or " *surplus* " or " *overplus*," to some other person, the legacy described by the word " residue," " remainder " or "surplus " or " overplus," as the case may be, is to be treated as equally as certain and definite as those which were described in terms of so many dollars or pounds, unless it is clear that the testator's intention was otherwise; and if a deficiency of funds occurs, the legatee of the " *residue*," is entitled to a dividend on the amount the residue would have represented if there had been no deficiency.

This rule of construction was firmly established in 1812, by the decision of Sir William Grant in the leading case of *Page* v. *Leapingwell*, 18 Ves. 463, and it is thus stated in *Harley* v. *Moon*, 1 Drewry & Smale 627 (1861) : " If a testatrix has power to dispose of a definite sum, for example £600, and says I give £100 to A, £100 to B, and the remaining £400 to C, of course the sum of £400 is given just as specifically to C, as the other two sums of £100 each are given to A and B. If instead of using that language, the testatrix says, I give £100 each to A and B, and the remainder I give to C, without specifying the amount of the remainder, the Court has held that in the absence of anything showing a different intention, that the intention was to give the residue as a specific sum to C, just as specifically as the gifts to A and B. That is the case of *Page* v. *Leapingwell*, in which the Court considered that the intention was to give to

each legatee a definite portion of the fund, and in such case if the fund by reason of costs or otherwise becomes diminished, each legatee must bear a due proportion of the loss." See also *Hazlewood* v. *Green*, 28 Beav. 1; *Van Nest* v. *Van Nest*, 43 N. J. Eq. 126; *Walpole* v. *Apthorpe*, L. R. 4 Eq. Cas. 37; *Wright* v. *Weston*, 26 Beav. 429; *Elwes* v. *Causton*, 30 Beav. 554; *Miller* v. *Huddlestone*, L. R. 6 Eq. Cas. 65; *Bjorkman* v. *Lord Kimberly*, 57 L. J. Ch. D. 743.

When the judges say that the rule applies when the testator is dealing with a fund of *definite amount* they mean (*a*) not a fund so definite and invariable in amount that it cannot be subject to any increase or diminution, and will necessarily pay out exactly as the testator expected; but they mean (*b*) a fund of such amount as the testator *supposed* would be forthcoming, liable, however, to *possible* increase in cases where, *for example*, there is a direction to sell property for *not less than* a certain amount; or to be diminished by deductions necessarily incident to carrying out the directions the testator has given in reference to it or the method of realizing it.

The sum represented by the words " *and whatever other sum* " was an unknown quantity—an unreliable quantity, upon which no dependence could be placed. Of necessity, therefore, when he proceeded to consider into what shares he should make the " *division* " of the fund, his mind was addressed to that element of the fund which was certain—the legacy of $30,000. And when he provided four shares of $5,000 each, he intended and contemplated that they should depend for payment upon the legacy of $30,000 and not upon that uncertain possibility " *whatever other sum.*" And hence, as these four shares were payable out of *but were not to consume* the whole of the legacy, it is obvious that he intended that there should be a " residue " of the legacy itself to the extent of $10,000, and in giving Mrs. Van Bibber the " residue " of the fund to be divided, he gave her $10,000 *of the legacy* plus anything which might come to James Sykes from the general residue of the testator's estate.

It is plain that the testator contemplated that the

legacy of $30,000 would be paid in full—he had every reason to do so. He was leaving an estate considerably more than enough to pay all his legacies in full, and there is not an expression in his will which tends to show that he contemplated any possible deficiency. He only contemplated that there might be *more than enough* to pay all the legacies fully, and that some additional amount might be added to the legacy of $30,000 under the 3rd item. There is no reason, then for saying that the testator intended by the use of the word " residue " that Mrs. Van Bibber should take chances of there being a deficiency. The possibility of a deficiency never entered his head. To say that he did contemplate a deficiency, because he used the word " *residue* " is simply begging the question. It is difficult to see the force of the appellant's contention, that because an additional uncertain sum was to be added to the $30,000, the residue given Mrs. Van Bibber, was wholly vague and uncertain.

PAGE, J., delivered the opinion of the Court.

George Presbury died in the year 1883, leaving a last will by which he devised and bequeathed all his estate to trustees, for the benefit of his wife, Louisa Presbury, for life, and directed that on her death, the whole estate (except a house on Charles street and certain other property that was specifically bequeathed) be sold, and the proceeds thereof distributed as required by subsequent clauses. In the third item he bequeathed as follows:

" Item 3d. I give and bequeath to Frank X. Jenkins for my dear adopted nephew, James Sykes, Thirty Thousand Dollars, which sum and whatever other sum he, the said James Sykes, may be entitled to under this my will, In Trust to invest the same, and the income, or as much of said income as may be necessary, to apply to the support, education and maintenance of said James Sykes, until the said James Sykes shall attain the age of twenty-five years, when the said trustee shall pay to him said sum with the income that may have accrued

thereon.  In the event of the death of my said nephew James Sykes before he attains the age of twenty-five (25) leaving a widow and a child or children, then the said sum to which he would be entitled is to be so divided that the widow and each child may share alike, and if he die leaving a widow and no child or children, then the whole sum to the widow, and if he die leaving a child or children and no widow, then the whole sum to the child or children, and if he die leaving no widow or no child or children, then the sum to which he would be entitled is to be divided as follows: to his mother, Mrs. Imogene Sykes, the sum of five thousand dollars ($5,000); to his sister, Lina Sykes, five thousand dollars (5,000); to Harry Lee Sykes, five thousand dollars ($5,000); to Chas. H. Sykes, five thousand dollars ($5,000); and the residue to Mrs. Mary Van Bibber, wife of Dr. John Van Bibber."  (Record, p. 9 and 10.)

And by the twelfth item, as follows:

" Item 12th.  I give and direct that the residue of my estate be equally divided between my niece, Mrs. Mary Van Bibber, and my nephew, James Sykes: that the share of Mrs. Van Bibber shall be for her sole and separate use and that the share of James Sykes shall be held in trust by Frank X. Jenkins under the same terms as are set forth in the 3rd item of this will."

At the time of the testator's death, the estate was more than sufficient to pay all the pecuniary legacies. These amounted in the aggregate to $95,000.  It is now alleged that when all the estate shall be sold, the amount to be realized therefrom, will not be sufficient to pay them all in full.  The bill was filed by the trustee substituted for the trustees named in the will, and it is asked that the property be distributed under the supervision and order of the Court.

The controversy to be settled in this appeal arises under the third and twelfth items, already fully stated. There was no residue to pass under the twelfth item, and the assets not being sufficient to pay in full the amount bequeathed to James Sykes in the third, he having died unmarried and childless before attaining the

age of twenty-five years, the Court below was asked to determine how the funds applicable ought to be distributed. It is contended by the appellants, that they are each entitled to be paid the amounts severally awarded them by the testator, at least to the extent of the fund to be distributed, and that Mrs. Van Bibber takes only what may remain, whatever that may be. Mrs. Van Bibber, on the other hand, claims that the legacy in her favor contained in the third item, is specific, and that in consequence if the fund applicable is not adequate to the payment of all, the other persons named should have the amounts abated proportionally.

In searching for the intention of the testator we cannot doubt that the testator in the third item disposes of two sums as one sum, viz., a sum composed of the $30,000 and of such other sum James Sykes was entitled to under other portions of his will. The last mentioned sum was that to which he should be entitled under the general residuary clause, that is the twelfth item. In other words, the sum to be paid James Sykes when he had arrived at the age of twenty-five years, was that which was to be ascertained by adding the $30,000 to the sum received from the residue. If this be correct, the case is very different from a division of the single sum of $30,000. Suppose, for instance, the sum of ten thousand dollars were carried to the $30,000, Mrs. Van Bibber would then receive twenty thousand dollars, instead of ten thousand, and her proportion would be one-half of the whole fund. If the residuary fund may be supposed to diminish, Mrs. Van Bibber's share would grow proportionally smaller, and if it should not exist at all, her proportion would be only a third. We find nothing in the will that casts a doubt upon the purpose of the testator to make distribution of the whole amount to which James Sykes was entitled. If words convey any meaning, it is clear that he intended to dispose of the fund coming from the residue, as well as of the specifically named sum. His language is without a possibility of being misunderstood: it is, " I give and bequeath thirty thousand dollars *which sum*, and whatever other

sum he, the said James Sykes, may be entitled to under this my will," &c., "shall be applied to the support of James Sykes until he arrives at the age of twenty-five years," "when the said Trustee shall pay to him *said sum* with the income that may have accrued thereon." What *sum* did the testator there refer to? Obviously not the $30,000 only, but a sum made up of that sum added to the sum to come from the residuary clause. And again, when *in the same item*, he comes to provide for the event of Sykes' death under the age, unmarried and childless, he declares that the "sum to which he (James Sykes) would be entitled is to be divided," &c., it cannot be questioned that the sum thus to be divided was one made up from the addition of the bequest under the third item to that under the twelfth. He does not divide the certain sum of $30,000 and by additional words bequeath the uncertain amount to be derived after the whole estate is settled to Mrs. Van Bibber. If he had done that, then Sykes and Mrs. Van Bibber would have stood in the same footing *quoad* the $30,000, for all the authorities agree to the reasonable rule, that when a sum certain is to be divided, a certain part to one, another certain part to another, and the residue to a third, the legacy of the third is as clearly specific as those of the others, and they are all on the same footing.

But here, the testator links the certain to the uncertain and of the sum necessarily uncertain so obtained he makes division. How can we assume that the testator disregarded what has been called "the unknown quantity" or hold that his mind was addressed solely to the certain fund to the exclusion of the uncertain, when he has expressly declared that the sum to be divided, is the $30,000 added to the residuary fund? We do not have here the division of a definite fund, liable to increase, but a sum indefinite and incapable of ascertainment until the final settlement of the whole estate. The case of *Walpole* v. *Apthorpe*, L. R. 4 Eq. Cas. 37, is one where the doctrine of a precise legacy with a "chance" for more was applied. The testator, after reciting that a policy amounted to £6,416, and that he already ap-

pointed by deed two sums of £2,000 each, bequeathed
£1,000 to A, £1,000 to B, and £416, residue and re-
mainder of the moneys to be received under said policy.
The amount received from the policy was £6,532.   Here
the division was made upon a sum certain, or at least
assumed to be certain by the testator, and it showed
that the testator intended to make an " exact division."
LORD ROMILLY said in delivering his opinion:  " I hesi-
tated at first on account of the subsequent words, but I
am of opinion that they do not alter the character of
the bequest and that the testator meant to give to the
daughters of W. H. Apthorpe (to use the words of SIR
WILLIAM GRANT in *Page* and *Leapingwell*)—not an in-
definite surplus, but a precise legacy to a certain extent,
with a chance of something more."   The case of *Page*
v. *Leapingwell*, 18 Vesey 463, is a leading case on this
subject.  There the testator devised to Sir Thomas Hyde
Page and two other trustees his house called Medford
Castle in trust to sell for not less than £10,000, and
then to pay several sums amounting to £7,800, and the
overplus moneys " to invest, and to pay the interest to
A."   The castle sold for less than the amount named.
The Master of the Rolls, said:  " The question is whether
the testator did not assume, that he had £10,000 to dis-
tribute, and made his distribution upon that supposition
. . . If that is so the consequence is clear.   As to the
mandatory clause I refer to it only as showing the inten-
tion: and that he made his will upon the clear supposi-
tion that he had at least £10,000 to portion out in this
manner.   He thought there might be more, and in that
event he meant to give these parties the surplus, what-
ever that might be."   It was accordingly held that the
legatees took as specific legatees, and they were required
to abate among themselves.   Now there was a definite
fund, or at last one supposed by the testator to be certain
and upon this the division was made.   In the case at
bar, if the testator knew the value of his estate, and it
must be presumed he did, he must have supposed that
something would come from the residue of the estate,
and yet he requires that uncertain amount to be added

to the $30,000, and makes the division upon the basis of the uncertain sum so obtained. In *Currie* v. *Lord Kimberly*, 57 L. J. Chan. Div. 744, there is a statement of the doctrine of *Page* v. *Leapingwell*. KAY, J., said it was, " a case in which definite portions of a definite fund are given to various persons, and then the residue of that definite fund is given to some one else——the residue is as much a definite sum as any other part of the fund so given, and it is not residue in the ordinary meaning of that term in a will." *Elwes* v. *Causton*, 30 Beavan 555; *Booth* v. *Alington*, 6 De G., M. & G. 613; *Wright* v. *Weston*, 26 Beavan 429; *Haslewood* v. *Green*, 28 Beavan 1; *Miller* v. *Huddleston*, L. R. 6 Eq. Cas. 65; *Petre* v. *Petre*, 14 Beavan 197; *Van Nest* v. *Van Nest*, 43 N. J. Eq. 127.

In *Harley* v. *Moon*, 1 Drewry & Smale 627, it was held an aliquot portion of the residue, could not have been intended, because the fund was first to be diminished by the payment of debt and expenses, and that left the sum to be divided uncertain. So in *Wilday* v. *Bennett*, L. R. 6 Eq. Cas. 193, the testator having a general power of appointment over personal property, directed debts and expenses to be paid out of her personal estate impliedly payable out of the same fund, then gave pecuniary legacies to various persons, and then all the residue to others. It was held that the gift of the residue, was what should remain after the payment of debts, expenses and legacies, the Judge remarking that this construction of the will " gets rid of the argument derived from the case of *Page* v. *Leapingwell*." The case *In re Harries Trust*, Johnson's Ch. R. 199, is of similar import. There Gilbert Harries, having power of appointment by deed or will of two policies of £2,000 each and all bonuses, settled £1,000 on each of his two daughters by deed, he having agreed to do so, and afterwards by his will directed that subject to the two appointments already made by deed, £1,000 should be paid to A, £1,000 to B, residue to a third person. One of the former appointees under the will having died, the claim was made, but denied by the Court, that the lapsed

interest was vested in the person who was to take the residue. It will be observed that the testator had disposed of the entire corpus of the fund and nothing was left for the residuary clause to operate upon, save the surplus in the shape of bonuses—an " indefinite floating surplus varying from day to day as he lived longer." It was held that it was the intention of the testator to dispose of the entire moneys secured by the policies, subject only to the charges created by previous appointments by deed *inter vivos*, and that by the ultimate appointment as to the residue and remainder of the said moneys, he meant to pass the whole of the rest and residue of such moneys, a balance uncertain in its very nature; and that therefore the lapsed share fell into the residue: *Ashton* v. *Wood*, 43 L. J. Chan. Div. 717. Of the case of *Corballis* v. *Corballis*, 9 L. R. (Ireland) Chan. Div. 321, much was said at the argument, but we will not advert to it further than to point out, that the decision is. rested upon the theory, that the bequests were not of a particular sum, but of the proceeds of a policy entitled to accretions by way of bonus that accrued periodically, and remained uncertain during life. The Court says: " Unless the subject of the gift is certain, or is so treated, the word ' residue ' will be held to mean the entire fund, subject to the prior legacies given out of it. Here the legatee of this residue would, I think, be in this dilemma, that he must either take the residue, including the bonuses, as a residue, or admit that the bonuses did not pass to him, but were undisposed of." The last remark may find an application in this case, for if the sum to be divided is only the $30,000, then the amount coming or that might come from the 12th item is undisposed of by the will. Mrs. Van Bibber must claim that part of the sum as residue, as the term is understood in its ordinary sense, or else she would be compelled to admit that it did not pass to her.

For these reasons we are constrained to hold, that the appellee cannot require the appellants to abate, that they are entitled to be paid the several sums allotted to them out of any money for distribution under the third

item of the will and that Mrs. Van Bibber is only enti-
tled to the residue, whatever that may be.

The decree must therefore be reversed and the cause
remanded for further proceedings.

*Decree reversed and cause remanded.*

(Decided June 29th, 1898.)