## W. R. HORTON v. SEABOARD AIR LINE RAILWAY.

(Filed 10 October, 1907).

1. **Railroads—Negligence—Duty of Employer—Competent Assistance—Ordinary Care.**

It was the duty of defendant railroad company to furnish the plaintiff, its engineer, a competent person to assist him in fixing his locomotive, the engineer acting under the instruction of the defendant, and such assistance being necessary from the character of the work being done; and the defendant is liable in damages when the assistant fails to exercise reasonable or ordinary care to prevent an injury, such failure being the proximate cause of the injury.

2. **Same—Instructions.**

While a party to the litigation is entitled to have correct propositions of law applicable to phases of the testimony given as instructions to the jury, when aptly tendered, it is not reversible error when the court, in its general instructions or in response to special prayers, has stated the proposition in a form equally as favorable to the contention of the appellant.

HORTON *v.* RAILROAD.

**3. Same—Fellow-servants—Evidence—Burden of Proof.**

When it appears from the evidence that plaintiff was injured, while in the course of his employment, by reason of the slipping or dropping of an end of a rod by his fellow-servant, upon the other end of which he was at work, such is sufficient evidence to be considered by the jury upon the question of negligence, and, if unexplained, justifies the inference of negligence or the failure to exercise due care, when the consequences of such act could readily have been perceived. Revisal, sec. 2646.

CIVIL ACTION, tried before *Biggs, J.,* and a jury, at February Term, 1907, of the Superior Court of VANCE County.

Action for personal injury sustained by plaintiff while in the employment of defendant.

Plaintiff testified that he was, at the time of, and had been for many years before the injury complained of, in the employment of defendant as yard locomotive engineer at Henderson, N. C.; that on 10 December, 1903, Mr. Clark, the traveling engineer of defendant, who had charge of its engines and the duty of looking after them, came to Henderson and told him that the front end of the engine was in bad condition and must be fixed at once. Plaintiff told Clark that the brass was worn out, and that he could not fix it. Clark said that it must be done—that plaintiff must fix it at once. Plaintiff told him that he would do the best he could with it; that he had no tools. He said that it must be done that night. It snowed and the wind blew "as hard as you ever saw it." When plaintiff quit work he backed down to a yard and bought some wood. Seagrave was fireman on the engine. Plaintiff says: "We were working on the main rod. Seagrave had never seen a rod taken down before, and didn't look like he knew anything about it. I was trying to enter the rod into the back end of the strap, when his end slipped out of his hand and jerked my hand down on the rod. He dropped his end of the rod. I had hold of the other end of the rod; it mashed my arm. It was eight or ten feet long. It was about half-past ten or eleven o'clock at night when I

got through fixing the engine." He testified that certain tools were necessary to do the work; that he purchased a file himself, and that it was necessary to have one man to help him. The foregoing is all of the evidence in regard to the time, place, manner, etc., of the injury. There was evidence in regard to the condition of the engine and of the work to be done on it, the character and extent of the injury, none of which is necessary to set out in detail for the purpose of passing upon the exceptions referred to and relied upon in the defendant's brief. Defendant moved for judgment of nonsuit. Motion denied. Defendant excepted. The usual issues were submitted to the jury.

His Honor, after stating the contentions of the parties, among other instructions not excepted to, charged the jury: "As between master and servant, the mere fact of the servant being injured while in his employ is not *prima facie* evidence of negligence, and the burden is upon the servant to prove the injury was caused by the master, and he must show that the injury was the result of his negligence. It is not sufficient to show that he was injured; he must go further and show the cause of the injury, and that it was the result of negligence of some agent of the master, and that it was this negligence that was the proximate cause of the injury. So much for the questions of law which I shall give you to guide you and control your actions in determining the first issue. Now, applying these rules to the facts in the case, you must determine whether Mr. Horton was injured by the negligence of the defendant's fireman, Mr. Seagrave, and whether that negligence was the cause of the injury, if you find that Mr. Horton sustained an injury. Did the defendant railroad, through its agent, fail to exercise proper care, as I have explained to you, in handling this rod, and was such negligence the proximate cause of the plaintiff's injury, if you find he was injured, as claimed by him, on or about 10 December, 1903? That is the question which you must determine with reference to the

first issue." His Honor explained the evidence and directed the attention of the jury to the several issues and phases of the case. To this there is no exception.

Defendant requested his Honor to give the following special instructions:

"As between master and servant, the mere fact that the servant is injured while in his employ is not *prima facie* negligence and is no evidence of negligence." This prayer was given, the Court adding: "But the burden of proof is upon the servant to prove that his injury is caused by the negligence of the master."

"Upon the whole evidence, if the jury believe it, they will answer the first issue 'No.'" Refused, and the defendant excepts.

"The mere fact that plaintiff's arm was injured while in the employment of the defendant is no presumption of negligence." The Court gave this instruction.

"The mere fact that Joseph Seagrave dropped the rod is no presumption of negligence." The Court gave this instruction.

"The general rule is, that the mere fact and proof of injury, unsupported by other evidence of negligence or any attending circumstances whereby the jury can reasonably infer negligence, is not a presumption of negligence; and if the jury should find from the facts in this case there are no attending circumstances from which they can reasonably infer negligence, other than the bare fact of the unexplained falling of the rod upon the plaintiff's arm, they will answer the first issue 'No.'" His Honor gave the first part of the instruction, but omitted to give the latter part, to-wit, "and if the jury should find from the facts in this case that there are no attending circumstances from which they can reasonably infer negligence, other than the bare fact of the unexplained falling of the rod upon the plaintiff's arm, they will answer the first issue 'No.'" Defendant excepted.

There was judgment upon the verdict. Defendant appealed.

*T. M. Pittman* and *J. C. Kittrell* for plaintiff.
*Day, Bell & Allen* for defendant.

CONNOR, J., after stating the case: Defendant, in the well-prepared brief and the oral argument of counsel, alleges as the first ground for a reversal of the judgment the refusal of his Honor to direct judgment of nonsuit. This contention involves the proposition that there was no evidence of negligence fit for the consideration of the jury. It is conceded that plaintiff was in the line of his duty, acting by direction of an employee of the company having the power to give the order, and that Seagrave, whose alleged negligence in dropping the rod from his hand, was a fellow-servant, for whose negligence defendant is liable under the fellow-servant law. Rev., sec. 2646. Is there any evidence that Seagrave "dropped his end of the rod"? The plaintiff swears to it, and he is not contradicted. Seagrave is not introduced by either party. It is true that plaintiff also used the expression, "the rod slipped from his hand." It was for the jury to say which was the correct statement. If he dropped the end of the rod while plaintiff's arm was in a position to be injured thereby, it certainly constituted some evidence from which the jury may have inferred negligence. It was his duty to hold the rod—to use such physical power as was at his command to prevent it from dropping. The dropping of the rod was not conclusive, nor, as his Honor charged the jury, did it raise a presumption of negligence, but it was certainly some evidence thereof. In this connection his Honor said to the jury: "In determining the question as to whether the agent of the defendant was or was not negligent in dropping or letting the rod slip, if you find he dropped or let it slip, the question of whether he acted as a reasonably prudent man would have acted under similar circumstances must be con-

sidered, the burden being upon the plaintiff to satisfy you by greater weight of evidence that the agent did not exercise proper care. If you are satisfied by the greater weight of evidence that the agent did not exercise proper care, that he was negligent, and that this negligence was the proximate cause of the plaintiff's injury, then, as I have explained, it is your duty to answer the first issue 'Yes.' If you are not satisfied by the greater weight of evidence that he was negligent, or that it was the proximate cause of plaintiff's injuries, you will answer that issue 'No.' "

His Honor carefully explained to the jury that the burden of proof was upon the plaintiff, not only to show that Seagrave let—that is, permitted—the rod to slip or drop from his hand, but that he failed to exercise the care of a prudent man to prevent its doing so. There is no suggestion that the rod slipped or dropped because of its weight, or that Seagrave did not have physical strength sufficient to hold it— that it was too heavy for one man to hold. It is true that plaintiff says: "I should say that it weighed 400 or 500 pounds; I never weighed one." Defendant's witnesses say that it did not weigh to exceed 75 pounds. It was the duty of defendant, when, by its agent, it ordered plaintiff to fix the engine, to furnish a competent man to assist him, who would exercise reasonable—that is, ordinary—care in holding the rod. If it failed to do so, there was negligence; and if such negligence was the proximate cause of the injury, it was actionable. We have examined the cases relied upon by defendant: *Bryan's case,* 128 N. C., 387, and *Alexander's case,* 132 N. C., 428. We do not think them conclusive of the question presented by this record. Certainly, if one whose duty it is to hold up an iron rod while another person is in a position with reference to it that dropping it will injure him, the duty is imposed upon the person holding to use ordinary care to prevent it from dropping. In the absence of any explanation why he "dropped" it, is it not a

reasonable inference that he failed to exercise ordinary care? The principle governing cases of this kind has been so fully and so recently discussed by us that we deem it only necessary to cite the last one, in which *Mr. Justice Hoke* reviews all of them—*Fitzgerald v. Railroad,* 141 N. C., 530. We are all of the opinion that his Honor correctly denied the motion for judgment of nonsuit or to direct a verdict upon the first issue. There is no exception to the charge, as given, argued in the brief, and we find no error therein. Defendant, however, earnestly contends that his Honor committed prejudicial error in refusing to give the last part of the instruction asked. While it is settled by a number of cases decided by this Court that a party is entitled to formulate a correct proposition of law applicable to phases of the testimony, and have it submitted to the jury, it is equally well settled that, if the Court, either in its general instruction or in response to special prayers, has stated the same proposition in a form equally favorable to the contention of appellant, the failure to give such prayer is not reversible error. His Honor had clearly instructed the jury in respect to the law applicable to the testimony. He had, also, in response to defendant's prayer for special instruction, told the jury that the mere fact that plaintiff was injured while in the employment of defendant was "no evidence of negligence"; that the "mere fact that Joseph Seagrave dropped the rod is no presumption of negligence," and, again, that "the mere fact and proof of injury, unsupported by other evidence of negligence or any attending circumstances whereby the jury can reasonably infer negligence, is not a presumption of negligence." We are unable to see how much more strongly his Honor could have put defendant's contention, unless he had instructed them that there was no evidence of negligence. Having submitted the question of negligence to the jury upon the theory that if they found that Seagrave dropped the rod, we do not perceive how he could have said to them that if

they found no attending circumstances they must find that there was no negligence. Plaintiff's contention was that, in the absence of "attending circumstances" explaining why he dropped the rod, the jury should infer that he did so negligently—that he was not exercising due care. To have given the instruction asked would have been to reason in a circle and withdraw from the jury, indirectly, the very question which he had submitted to them. It was the unexplained dropping the rod which plaintiff relied upon to maintain his contention. It will be further noted that the instruction assumes that the evidence showed an "unexplained falling of the rod." This assumption has no support. All of the evidence is that Seagrave "dropped the rod," or that it "slipped" from his hand. It has been frequently held that, where the duty is imposed of securely fastening an object, the falling of which endangers life or limb of one to whom the person owes the duty of fastening the object, the falling of it unexplained justifies the inference that it was not securely fastened. *Windleman v. Calloday,* 88 Md., 98; *Gulock v. Eldermeyer,* 88 N. Y., 645; *Kearney v. Railroad,* 5 L. R. (Q. B.), 411, and other cases cited in *Womble v. Grocery Co.,* 135 N. C., 474. Here Seagrave was an intelligent human being, knew the conditions and the duty which he owed plaintiff, and almost certain injury to him if he dropped the rod. If there were "attending circumstances" explaining why he did so, as if his hands were benumbed by cold, or he was taken suddenly sick, or for any reason he was suddenly disabled, it was open to defendant to show such conditions. The instruction asked is not perfectly clear, but, as we interpret the language, his Honor correctly declined to give it. The case has been, so far as an examination of the record discloses, fairly tried, and every phase of the testimony submitted to the jury, with correct instructions in respect to the law.

The judgment must be

Affirmed.