MARY MOORE, Administratrix, v. SOUTHERN RAILROAD COMPANY.

(Filed 29 April, 1914.)

1. Railroads—Master and Servant—Fellow-servant—Baggage Master—Negligence with Firearms—Trials—Damages—Statutes.

Where a baggage agent of a railroad company, in the course of his employment in getting some baggage checks from a drawer to a desk in the baggage room, removes a pistol which he knew to be loaded, takes it in his hand, and in a careless manner opens another drawer to the desk, and in doing so causes the pistol to fire, by pressing the trigger with his finger, and kills his assistant, and this is done without the exercise of ordinary care and without due regard to the direction in which the pistol was pointing at the time, his negligent acts in causing the death of the deceased are attributable to the company employing him, and it is held liable for the consequent damages, in an action by the administrator of the deceased. Revisal, sec. 2646. The distinction between this case and instances not within the terms of the statute, pointed out, CLARK, C. J.

2. Same—Appeal and Error—Trials—Instructions—Harmless Error.

Where, in an action for damages, a railroad company is held responsible for the negligent manner in which its baggage master handled a pistol, in the course of his employment, which caused the death of another employee of the company, it is error for the trial judge to charge the jury that they must find that the baggage master was also negligent in leaving the pistol in the drawer of a desk in the baggage-room, from the evidence thereof; but the jury having found the issue of negligence in plaintiff's favor, it is not prejudicial to the defendant, the appellant.

3. Railroads—Master and Servant—Joint Employment—Trials—Evidence—Nonsuit.

Where a baggage master is employed at a union station to handle the baggage of two or several railroad companies, is

paid his salary by one of these companies, and in the course of his employment negligently kills his assistant, and the administrator of the deceased enters a suit for damages against the company by whom his salary was paid, the defendant may not avoid liability upon the ground that at the time of the negligent act the baggage master happened to be performing a duty for another of these companies; and where the evidence is conflicting, a motion for nonsuit should be denied, the evidence being construed in a light most favorable to the plaintiff, and taken as true.

BROWN, J., dissenting; WALKER, J., concurring in the dissenting opinion.

APPEAL by defendant from *Devin, J.,* at February Term, 1914, of FORSYTH.

*Louis M. Swink and Hastings & Whicker for plaintiff.*
*Manly, Hendren & Womble for defendant.*

CLARK, C. J. This is an action for the wrongful death of plaintiff's intestate through the negligence of a fellow-servant. The baggage agent of the defendant left a loaded revolver in a drawer in the desk in the baggage room. It was lying upon some baggage checks, and the baggage agent in removing the pistol from the drawer in order to get the checks, held it in one hand while pulling open another drawer, causing the pistol to fire. It was directed towards the deceased, a fellow-servant in the employ of the defendant, and was discharged, thereby killing him.

The court charged the jury that if they found that the defendant company through its agent left a loaded revolver in said desk where it was necessary to be handled in order to transact the business of the department, and should also find that in moving the pistol from the drawer in the course of his employment said agent took hold of and handled the pistol without the exercise of ordinary care as to the manner in which he was handling it, and carelessly and without the exercise of ordinary care, and without due regard to the direction in which it was pointed, pressed the trigger, and as a result of such careless conduct and want of care the plaintiff's intestate

was killed, and the jury should further find that by the exercise of ordinary care the injurious result ought reasonably to have been anticipated as a consequence of such conduct, to find the first issue "Yes"; otherwise, to answer it "No."

In this we find no error of which the defendant can complain. Indeed, in requiring, in addition to the last two circumstances, the jury to find further that there was negligence in leaving the pistol in the drawer, there was error, but of this the defendant cannot complain. It was an immaterial circumstance.

If the baggage agent had suddenly and forcibly pulled the drawer open, without observing the fact that another employee was standing close by, and by reason of such negligence and unusual and forcible manner of pulling open the drawer the sharp corner of the drawer had struck the deceased on the temple, killing him, and by the use of ordinary care the agent could reasonably have anticipated such consequence, the defendant would have been liable for the negligence, just as if one employee has negligently thrown a cross-tie or a lump of coal on another, as in *Fitzgerald v. R. R.,* 141 N. C., 531, where the point is thoroughly discussed, or dropping a bar of iron on his foot, *Horton v. R. R.,* 145 N. C., 132, and many similar cases.

The injury was an accident in the sense only that the killing was not intentional. The jury under the last paragraph of the charge must have found that the killing was in consequence of the negligence of the baggage agent from the careless manner in which he held the pistol while pulling open another drawer. He was in the discharge of his duties in the course of his employment. He was negligent, as the jury find, both in the manner of holding the pistol while pointed at another and in pulling open the drawer at the same time. The statute is explicit, that for "injury caused by the negligence, carelessness, or incompetence of a fellow-servant," the defendant is liable. Rev., 2646.

The able and experienced counsel of the defendant do not base their motion for a nonsuit upon the ground that the wit-

ness Wall was the agent solely for the Southern Railway, and that the death of the decedent was caused by him when acting solely as agent of the Norfolk and Western, either by exception on the trial or by taking such point in their briefs. But as the suggestion is made, it is well to refer to the testimony of Wall himself, who says: "I was the *joint* agent of the Norfolk and Western and the Southern Railway companies. Lincoln Moore (the deceased) was employed to help me look after the baggage for the Southern *and* Norfolk and Western." He also says: "I was assistant baggage agent at the union station at Winston-Salem, and worked in the baggage room." On the motion to nonsuit, the evidence must be taken as true in the aspect most favorable to the plaintiff. According to the evidence above set out, it appears that Wall was the joint agent of the two railroads, and operating the joint baggage room at the union depot in their behalf. That being so, it cannot be said that any one service was done by him at the responsibility of one railroad and the other service at the responsibility of the other. The witness testified that he was the "joint" agent of both roads, operating the "joint" business of both roads. It follows, therefore, that the plaintiff could have sued either or both roads, at her option. It was á joint employment and he was a joint agent. There is no evidence tending to show, and it is unreasonable to suppose, that he was paid according to the trains he served. He was doubtless employed by the month, as is customary, and whatever work he did, according to his testimony, was as joint agent in the joint or common business of the two roads.

A case almost exactly in point is *R. R. v. Dorsey,* 66 Texas, 158. In that case the plaintiff was employed by one railroad company to act as night watchman in a union yard jointly kept and used by that company and two others. While performing his duty upon a train and track of one of the latter companies, and because of some negligence of that company, he received personal injury, and it was held: "(1) Between the plaintiff and his employer the relation of master and servant

existed, by express contract.  Between plaintiff and the other companies that relation arose by inference from the service and the connection of the companies.

"(2) No proof being offered as to the contract between the companies, their duties respecting the yard where the plaintiff was injured could only be inferred from the manner in which the premises were used.

"(3) It appearing that the plaintiff was employed to work in the 'union yard,' that it was used by the three companies in common, and the plaintiff was injured while performing his duty, it was not error to instruct the jury that if the injury resulted from the negligence of either company, all were liable jointly and severally.",

This is a well considered case, and there are many others like it.

In *Vary v. R. R.,* 42 Iowa, 246, it did not appear whether the plaintiff was injured on the road of the defendant or of the company by which he was employed.  His engagement was to serve both companies very much in the same way as the plaintiff's intestate in this case, and it was held that he could sue either or both, and it was said: "This principle is elementary, and needs no citation of cases in its support."  Among other cases to the same purport is *Buchanan v. R. R.,* 75 Iowa, 393, in which it is said: "The idea that the employee was under the employment of one company for five minutes, and then another for a few minutes, and another for a short time, and that he changed his employers with the facility with which the kaleidoscope shifts an array of colors involves an absurdity," and adds that this would make the service "not only the ridicule of the public, but a system of deception, to the great peril of the most prudent and careful drivers."  Another case is *Brow v. R. R.,* 157 Mass., 399, which held that in such cases where an employee is in a common employment at a union station, rendering service first for one company and then the other, that one injured by the negligence of such servant could recover out of either or all of the companies, though there was no express contract between the companies as to his employment.

If; as Wall testified, he was the joint agent of both companies, they were jointly and severally liable. If, however, as he also testified (and which is not incompatible) he was appointed and paid by the Southern to attend to the joint business for both companies in the baggage room, both companies are liable. Certainly the Southern Railway, which is the one sued here, cannot object that Wall was not in its service when he was handling baggage by its direction for the other company.

Nor are we impressed with the suggestion that a farmer would not be held responsible for the negligence of his servant in a case of this kind, and therefore the railroads should not be. The railroad would not have been liable until the enactment of chapter 56, Laws 1897, now Rev., 2646, which provides: "Any servant or employee of any railroad company operating in this State who shall suffer injury to his person, or the personal representative of any such servant or employee who shall have suffered death in the course of his services or employment with such company by the negligence, carelessness, or incompetency of any other servant, employee, or agent of the company, or by any defect in the machinery, ways, or appliances of the company, shall be entitled to maintain an action against such company." This statute has been sustained by repeated decisions of this Court, and indeed such statutes have been now almost universally adopted.

This being a motion for a nonsuit, the evidence must be taken as true. ·The witness testified that he was the *joint* agent of both railroads, and so was the deceased, who was his helper. The latter was killed "in the course of his services or employment," and the jury found that this was done "by the negligence, carelessness, or incompetence of the other servant." Wall testified that he was appointed and paid by the defendant, the Southern Railway. But he also says that he was the joint agent of both companies, in their joint business of looking after the baggage that came to the union depot.

No error.

MOORE *v.* R. R.

BROWN, J., dissenting: I am of opinion that the conclusion reached by the majority of my brethren is in contravention of the previous decision of this Court, and that the motion to nonsuit should be sustained. As the facts are not stated fully in the opinion, I set them out from the record.

The only witness examined who testified to the facts was J. A. Wall, introduced by the plaintiff.

After testifying that he was assistant baggage agent at the union station in Winston-Salem, the witness says: "About seven days before Lincoln Moore was killed, I found a pistol in an old desk in the baggage room. This desk set on the back side, where we kept all our checks and some supplies. I found the pistol a few days after Mr. Minter, the baggage agent, took charge. I took it out and rubbed it up, and got the dust off of it. Mr. Minter saw me when I found it.

"When I put the pistol in the drawer immediately after finding it, I did not put it in the drawer where we kept the baggage checks. The drawer in which I put it contained a book and some old circulars.

"On the morning that Lincoln Moore was killed, the pistol was in the drawer on top of Norfolk and Western Railway checks. I put it there. It was put in that place the evening before Moore was shot. There was one cartridge in the pistol. Up to the time I put it in the drawer just spoken of, it had been in the drawer where the circulars and book were.

"Mr. Minter said to me: 'I found a cartridge I believe will fit your old gun.' When he told me about this cartridge, I took the pistol out and put the cartridge in it.

"Lincoln Moore had been working in the baggage room about two months and a half. He was hired by Victor Davis; his duties were to help load baggage going out and unload baggage coming in. He was under my instructions and did what I told him to do. We were both at the station that morning, getting the baggage off on the 5:40 Southern train. The next train that left after that was the 7:05 train over the Norfolk and Western for Roanoke. After getting the baggage off on the

Southern, Lincoln Moore and I came around near my desk, and Lincoln Moore sat on a stool inside of the office and was combing his hair.

"I went to get some Norfolk and Western checks to put strings on them to prepare to check the baggage going out on the 7:05 Norfolk and Western. Opening the drawer, I found the pistol lying on top of the checks, and I picked it up with my right hand and was going to lift it back. into the other drawer, and just as I went to pull the drawer it got hung.

"I stepped back like this (indicating), and as I stepped back, it went off, the bullet striking Lincoln Moore and killing him. I had pistol in my right hand and was trying to open the drawer with my left hand, and in jerking, the pistol went off."

It is not contended that the defendant or its officers either authorized or knew of the keeping of the pistol in the desk by the baggage agent, Wall. In my opinion, it was the unauthorized and personal act of Wall, for which the defendant is not liable.

1. Wall was not acting within the scope of his authority or in furtherance of this defendant's business. He says his purpose in opening the drawer was to get checks to put on baggage for the 7:05 Norfolk and Western train, and that the pistol was lying on top of those checks, and that he picked it up for the purpose of putting in the other drawer from which he had taken it. He was no more acting for the defendant when he took the pistol up to remove it to the other drawer and accidentally killed Moore, than he would have been had he willfully and intentionally discharged it.

Suppose a merchant's clerk had placed a pistol in his desk without the knowledge or authority of his master, and, in going into the desk to get out papers in his master's business, he had taken the pistol off the needed papers, and in so doing had accidentally but negligently killed a fellow clerk, does any one for a moment suppose that this Court would hold the merchant liable for such unauthorized act? If the merchant would not be held liable under such circumstances, then this defendant, although a railway company, ought not to be!

The test laid down by *Justice Hoke* in *Sawyer v. R. R.,* 142 N. C., 1, is: "Where the question of fixing responsibility on corporations by reason of the tortious acts of their servants depends exclusively upon the relationship of master and servant, the test of responsibility is whether the injury was committed by authority of the master expressly conferred or fairly implied from the nature of the employment, or the duties incident to it."

And in the same case it is held that private corporations are liable for their torts (of this character) under such circumstances as would attach liability to natural persons. In this case a railway company was exonerated from liability for the tortious conduct of a superintendent when refusing employment to one who had applied to him for it.

This case is cited and approved in *Marlowe v. Bland,* 154 N. C., 141, where a farmer ordered his servant to cut and pile cornstalks, who, after piling them, without authority from his master, set fire to them and caused damage. The master was held not liable.

This same idea is expressed by Wood in his work on Master. and Servant, section 307, quoted in *Marlowe v. Bland.*

"The simple test is whether they were acts within the scope of his employment; not whether they were done while performing the master's business, but whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him. By 'authorized' is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties intrusted to him by the master, even though in opposition to his express and positive orders."

In *Jones v. R. R.,* 150 N. C., 475, it is said: "Certainly no one will seriously contend that a master is an insurer of his servant's conduct in respect to torts committed by him while in his employment, without regard to the pivotal question whether such conduct had any relation to or was in the scope of the employment."

This subject is so fully discussed in the cases I have cited, as well as by *Justice Walker* in *Jackson v. Telegraph Co.,* 139 N. C., 347, and *Daniel v. R. R.,* 136 N. C., 517, that it is useless to cite other authorities.

It is true the pistol was on top of the checks, but the declared purpose in taking the pistol out of the drawer was not so much to get at the checks as to put the pistol back in the other drawer from which witness had taken it. The checks could easily have been taken out by lifting up the pistol and not removing it from the drawer. It was not at all necessary, in order to accomplish the master's work, that the pistol should have been taken out of the drawer it was in. That was the personal act of Wall, for which the defendant should not be held liable, as it neither knew of it nor could by any sort of means have prevented it.

2. There is another ground upon which it appears to me the motion to nonsuit should be sustained. This action is brought against the Southern Railway, and not against the Norfolk and Western.

While under the statutes of North Carolina these two railway corporations are compelled to coöperate in maintaining a union station in Winston-Salem, they are not and cannot be in any sense copartners, and neither is liable for the contracts or torts of the other.

The fact that the Southern Railway assisted in maintaining this union station, and employed Wall to load its baggage, did not make it responsible for Wall's acts when he was acting exclusively for the Norfolk and Western in checking and loading its baggage.

Wall testifies that the Southern Railway train had been loaded with baggage and had gone. At the time of the injury he was getting Norfolk and Western checks for the baggage on that train. He was performing no act whatever for the Southern Railway when he went in the desk and removed the pistol.

It is surely permissible for one person to act as agent for two others in performing separate and distinct duties at differ-

AMMONS *v.* MANUFACTURING CO.

ent times for each principal without making both principals liable jointly for all his acts, there being no partnership or privity between the principals.

It is true that this particular reason for sustaining the non-suit is not urged in the brief, but it is our duty to consider it when we pass on the sufficiency of the evidence to warrant a recovery of this defendant.

MR. JUSTICE WALKER concurs in this dissent.